MEYER SONNEBORN, Appellant, *v.* WILLIAM LIBBEY et al., Respondents.

As under the late United States Bankruptcy Act (14 U. S. Stat. 536, § 40), the power conferred upon a bankruptcy court to issue, in proceedings instituted by a creditor, a warrant to the marshal commanding him to take possession of the property of the alleged bankrupt was discretionary, as was also the power to recall or set aside a warrant after it had been issued, that court had power to impose, as a condition of granting the warrant or of denying a motion to recall one which had been granted *ex parte*, that the petitioning creditor should give a bond indemnifying the alleged bankrupt from loss or damages caused by the process in case of dismissal of the proceedings.

The firm of A. T. S. & Co. brought an action against plaintiff upon an alleged indebtedness. Plaintiff succeeded on the trial, but the judgment was reversed on appeal. Before a second trial said firm instituted bankruptcy proceedings against plaintiff, his alleged indebtedness being the disputed claim, and upon an *ex parte* application by the petitioners a warrant was issued to the marshal requiring him to take possession of plaintiff's property, which was executed; on the return day of the order to show cause, plaintiff denied the indebtedness or that he was insolvent and made three motions, *i. e.*, for a dismissal of proceedings, for a recall of the warrant, and for a bond of indemnity to be given by the petitioning creditors; the latter also moved to amend their petition. The court disposed of all the motions by one order which allowed the petitioners to amend, and denied the motion to recall the warrant, but required the petitioners to give a bond of indemnity against damages sustained by plaintiff in consequence of the seizure of his goods, if on the final hearing he "should prove he is not a bankrupt, and the proceedings against him, by said petitioning creditors, shall be dismissed." Said petitioners thereupon

gave a bond conditioned as required by the order, with this addition, " in case said proceedings are not dismissed, or if said Meyer Sonneborn shall be adjudicated a bankrupt thereunder, then this obligation to be void." A new trial of the action resulted in a judgment in favor of plaintiff herein, and upon submission of the question to the bankruptcy court, it decided that the judgment was conclusive as to plaintiff's indebtedness and dismissed the proceedings. In an action upon the bond, *held* that the bankruptcy court had authority to require the same as a condition for its refusal to recall the warrant; that the order in effect required it as the condition for such refusal; that there was a good consideration for the bond; and that there was such a compliance with its condition as imposed a liability upon the obligors.

(Argued April 27, 1886 ; decided June 15, 1886.) ;

APPEAL from judgment of the General Term of the Court of Common Pleas in and for the city and county of New York, entered upon an order made July 1, 1884, which affirmed a judgment in favor of defendant, entered upon an order dismissing the complaint on trial. (Reported below, 12 Daly, 509.)

This action was upon a bond executed by defendants.

From 1869 to 1873 and afterward, the plaintiff was a resident of Eufaula, Alabama, and was a merchant there, having, in 1873, a stock of goods worth about $10,000. In 1869 A. T. Stewart & Co., of New York, claiming that the plaintiff was a member of a firm which was indebted to them in the sum of about $2,500 for merchandise sold in the spring of 1867, commenced a suit in a State court of Alabama to recover that sum of him. He appeared in that action and denied that he was a member of the firm at the time the debt was created, or that he was in any way indebted to the plaintiffs therein. That action came on for trial and resulted in a verdict in his favor. A. T. Stewart & Co. appealed from the judgment entered upon that verdict to the Supreme Court of that State, and there the judgment was reversed and a new trial granted. Thereafter, in August, 1873, before the new trial was had, they, claiming to be creditors of Sonneborn on account of the debt above mentioned, filed their petition in the United States District Court for the Middle District of

Alabama, alleging that he had committed an act of bankruptcy and praying that he be declared a bankrupt. On the same day an order was issued requiring him to show cause on August 21, 1873, why the prayer of the petitioners should not be granted. At the same time A. T. Stewart & Co. also filed a separate petition praying that an injunction and provisional warrant of seizure issue forthwith; and such warrant was issued to the marshal, requiring him to "take possession of all the estate, real and personal, of said Meyer Sonneborn, debtor, except such as may be by law exempt, etc., and all of his deeds, books of account and papers, and to keep the same safely until the issue of said bankruptcy is decided and until the further order of this court." These proceedings were all *ex parte.* The marshal executed the warrant on the next day, the 16th day of August, by taking possession of Sonneborn's store and stock of goods, and thereafter retained the custody and possession of the same under his warrant. On the return day of the order to show cause, August twenty-first, Sonneborn appeared and denied that he was indebted to the petitioners, that he was insolvent, or that he had committed any act of bankruptcy, and stated that he was then and always had been able to pay his debts in full and would continue to do so unless broken up and ruined by the action of the petitioners, and he demanded a jury trial; and through his counsel he moved the court to recall the provisional warrant and return to him the property seized thereunder. He also moved the court that the petitioners be required to give a bond indemnifying him for all damage he might sustain by the seizure of his goods and effects under the warrant. The petitioners at the same time made a motion to amend their petition. The court made one order disposing of all the motions which allowed the petitioners to amend their petition, denied Sonneborn's motion to recall the provisional warrant of seizure, but granted his other motion and required the petitioners to give a bond in the sum of $5,000, indemnifying him for any damage he might sustain by reason of the "obtaining of the provisional warrant * * * or the restraining order directed to issue herein, and

for all damages accruing to him by virtue of the issuance of the same, and for all damages he may sustain by the seizure of his goods and effects under said warrant, if on the final hearing of the said creditors' petition to have the defendant adjudged a bankrupt, the said defendant shall prove he is not a bankrupt and the proceedings against him by the said petitioning creditors shall be dismissed," and the further consideration of all matters arising upon the order to show cause were adjourned to the fourth day of September. On the third day of September the petitioners filed the bond required, executed by them as principals and Geo. B. Butler and John M. Hopkins as sureties, the condition of which is as follows: "Now the condition of this obligation is such that if the above bounden A. T. Stewart & Co. shall well and truly save harmless and indemnify the said Meyer Sonneborn from any damages he may sustain by virtue of the obtaining of the provisional warrant issued in this matter, or of the restraining orders directed to issue herein, and from all damages accruing to him by virtue of the issuing of the same, and from all damages he may sustain by the seizure of his goods and effects under said warrant, if, on the final hearing of said creditors' petition to have the defendant adjudicated a bankrupt, the said defendant shall prove that he is not bankrupt and the proceedings against him by the said petitioning creditors shall be dismissed. In case said proceedings are not dismissed, or if said Meyer Sonneborn shall be adjudicated a bankrupt thereunder, then this obligation to be void; otherwise to remain in full force." On the fourth day of September the parties again appeared in court and Sonneborn again filed a special denial that A. T. Stewart & Co. were his creditors; that he had committed any act of bankruptcy and repeated his demand for a trial by jury, and nothing more was then done. In November, 1873, the new trial in the State court was had upon the merits, and resulted in a verdict and judgment for Sonneborn. The plaintiffs in that action again appealed to the State Supreme Court, where the judgment was affirmed. After the affirmance of that judgment Sonneborn claimed that it was conclusive that A. T. Stewart & Co. were

not his creditors, and that that question was not open for further litigation between the parties in the bankruptcy court, and this was denied by A. T. Stewart & Co. Thereupon Sonneborn and A. T. Stewart & Co. agreed upon a statement of facts in reference to the adjudication in the State court, and agreed to submit them to the district judge in bankruptcy, and that if he should decide that the judgment in the State court was conclusive, and could be pleaded in bar of any inquiry into the question of indebtedness in the bankruptcy court, then the bankrupt proceedings should be dismissed out of court. Upon the statement of facts thus submitted and the agreement of the parties the court gave judgment for Sonneborn. The stock of goods was then restored to Sonneborn, and upon examination they were found to be damaged to more than half their value. Thereafter, in 1880, this action was commenced upon the indemnity bond against the surviving principals and the sureties thereon. It was brought to trial, and after proof of the foregoing facts the court dismissed the complaint upon the following grounds: (1) "That the bond sued on was void, having been ordered by a court which had no authority by law to order it, and being without any consideration to support it. (2) That conceding the bond to have been valid its conditions were never performed, and the liability of the defendants has never attached because the condition has never been performed."

*M. W. Divine* for appellant. The bankrupt court had full power and authority to require a bond from A. T. Stewart & Co. to indemnify plaintiff from a wrongful seizure of his goods. It possesses an equity jurisdiction. (14 U. S. R. S. 517, 518, § 1; id. 520, § 8; *Sandusky* v. *National Bk.*, 23 Wall. 292; *Ray* v. *Norseworthy*, id. 134; *Morgan* v. *Thornhill*, 11 id. 78; *In re Wallace*, Deady, 433; Gen. Order No. 32 in Bankr. [Bump's 8th ed.] 866; *Ex parte Christie*, 3 How. 312.) The court had what are perhaps loosely termed "equity powers," *i. e.*, discretionary ones. (*Decker* v. *Judson*, 16 N. Y. 445; 14 U. S. R. S. 536, §§ 39, 40; *In re Wallace*, 1 Deady, 433;

*In re Miller*, id. 513 ; *Rosenbaum* v. *Garrett*, 3 Hughes, 662 ; *In re Anderson*, U. S. Dist. Ct. of Virginia, 23 Fed. Rep. 482 ; id. 494–6, 7, 8 ; Bump [9th ed.], 42–3 ; *Chappell* v. *Davidson*, 8 DeG., M. & G. 1 ; *Cayuga* v. *Magee*, 2 Paige, 116, 122.) The order requiring A. T. Stewart & Co. to execute a bond of indemnity cannot, in this collateral proceeding, be set aside or disregarded. (*People* v. *Sturtevant*, 9 N. Y. 263, 267, 274, 275 ; *Swift* v. *Poughkeepsie*, 37 id. 512 ; *Roderigas* v. *East River Sav. Instn.*, 63 id. 462 ; *Hunt* v. *Hunt*, 72 id. 228 ; *Lange* v. *Benedict*, id. 12 ; *Buffalo, etc., R. R. Co.* v. *Supervisors*, 48 id. 98 ; *Bangs* v. *Duckenfield*, 18 id. 595 ; *Rusher* v. *Sherman*, 28 Barb. 416 ; *Cocke* v. *Halsey*, 16 Pet. 87 ; *Elliot* v. *Perisol*, 1 id. 340 ; *Thompson* v. *Tolmie*, 2 id. 162 ; *Rhode Island* v. *Massachusetts*, 12 id. 717 ; *Windsor* v. *McVeigh*, 93 U. S. 274, 276, 278, 282, 283 ; *Bigelow* v. *Forrest*, 9 Wall. 339 ; *Day* v. *Micon*, 18 id. 156.) The condition of the bond was fully satisfied, and the liability of Stewart & Co. became complete. (*Fourniquet* v. *Perkins*, 7 How. [U. S.] 160 ; *Durant* v. *Essex Co.*, 7 Wall. [U. S.] 107 ; *Tuska* v. *O'Brien*, 68 N. Y. 448–9 ; *Clemens* v. *Clemens*, 37 id. 73–4 ; *Jordan* v. *Van Epps*, 85 id. 436.) Where a bond is given voluntarily, if it does not contravene public policy or violate any statute, it is valid and binding on the parties to it. (*Munter* v. *Reese*, 61 Ala. 295 ; *Wolffe* v. *McClure*, 19 id. 564 ; *Barnes* v. *Webster*, 16 Mo. 265 ; *Glassen* v. *Shaw*, 5 Watts, 468 ; *Archer* v. *Hart*, 5 Fla. 234 ; *Winthrop* v. *Dockendroff*, 3 Me. 156 ; *Park* v. *State*, 4 Ga. 329 ; *Barker* v. *Bartol*, 7 Cal. 551 ; *State* v. *Cannon*, 34 Iowa, 352 ; *Greathouse* v. *Dunlap*, 3 McLean, 303 ; *Rowlet* v. *Eubank*, 1 Bush, 477.) While the general rule is that a partner cannot bind his copartners by a writing under seal without authority, such authority may be by parol, or may be inferred from the course of business and dealing between the partners. (*Skinner* v. *Dayton*, 19 Johns. 513 ; *Smith* v. *Kerr*, 3 N. Y. 144.)

*Horace Russell* for respondents. The U. S. District Court, sitting in bankruptcy, was a statutory court whose jurisdiction,

procedure and powers were entirely governed and confined by the provisions of the act creating it. It was absolutely without either equity or common-law powers. (*Cary* v. *Curtis*, 3 How. 236; *U. S.* v. *Cultus Joe*, U. S. Dist. Ct., Sept., 1871; 15 Int. Rev. Rec. 57; *Scott* v. *The Young America*, 1 Newb. 101 [Mich. 1856]; *McIntire* v. *Wood*, 7 Cranch, 504; *Ex parte Cabrera*, 1 Wash. C. C. 232; *Wheaton* v. *Peters*, 8 Pet. 593; *Ex parte Bollman*, 4 Cranch, 75.) The U. S. District Court, sitting in bankruptcy, therefore, had not the jurisdiction to order a bond not provided for or contemplated in the statute which created the court and defined its jurisdiction. (Bouv. Law Dict., tit. "Jurisdiction;" Burr. Law Dict., tit. "Jurisdiction;" *In Re Morris*, 4 Nat. Bankr. Reg. 10.) Whatever a court does or requires in excess of its jurisdiction is void, and all subsequent proceedings fall with the void act or order which gave them birth. (*Kamp* v. *Kamp*, 59 N. Y. 212; *Windsor* v. *McVeigh*, 93 U. S. 274, 282, 283; *Ex parte Lange*, 18 Wall. 163, 176, 177, 178; *Bigelow* v. *Forrest*, 9 id. 339; *Day* v. *Micon*, 18 id. 156; *Brookman* v. *Hamill*, 43 N. Y. 554; 54 Barb. 209; *Fralick* v. *Betts*, 13 Hun, 634; *Murphy* v. *Salem*, 1 id. 141; *Poole* v. *Kermit*, 59 N. Y. 554; *Vose* v. *Cockroft*, 44 id. 415; *Wightman* v. *Karsner*, 20 Ala. 446; *Foster* v. *Glazener*, 27 id. 391; *Gunn* v. *Howell*, id. 663.) In all the cases in which a bond has been held valid because required by the order of a court, the court has been one possessing equitable power, and the bond has been required in the exercise of that power. (*Decker* v. *Judson*, 16 N. Y. 439; *Ames* v. *Webbers*, 10 Wend. 575; *Chandler* v. *Brecknell*, 4 Cow. 49; *Brown* v. *Murray*, 4 Dowl. & Ryl. 830; *Ford* v. *Townsend*, 1 Robt. 39.) By the Revised Statutes of New York and by the Code of Alabama, the validity of a common-law bond without consideration has been destroyed. (2 R. S. of N. Y. 406, § 77; Code of Ala., § 2891; *Town of Wayne* v. *Sherwood*, 14 Hun, 423; 76 N. Y. 599; *Codwell* v. *Colgate*, 7 Barb. 253; *Homan* v. *Brinkerhoff*, 1 Denio, 184; *Webb* v. *Albertson*, 4 Barb. 51; *Benedict* v. *Bray*, 2 Cal. 251; *Caffrey* v. *Dudgeon*, 33 Ind. 512; *Comm. of Ky.* v. *Bassford* [1851],

1 E. D. S. 218; *Murphy* v. *Salem*, 1 Hun, 141; *Fralick* v. *Betts*, 13 id. 634; *Poole* v. *Kermit*, 59 N. Y. 554; *Vose* v. *Cockroft*, 44 id. 415; *Brookman* v. *Hamill*, 43 id. 554; 54 Barb. 209; *Byers* v. *State*, 20 Ind. 47; *Ancoin* v. *Guillot*, 10 La. Ann. 124; *U. S.* v. *Hipkin*, 2 Hall's Am. L. J. 80; *Ward* v. *Syme*, 8 N. Y. Leg. Obs. 95; 4 N. Y. 171; *Rockwell* v. *McGovern*, 40 N. Y. Super. 118, 121; 69 N. Y. 294; *Alston* v. *Alston*, 34 Ala. 15; *Hester* v. *Keith*, 1 id. 316; *Gayle* v. *Martin*, 3 id. 593; *Whitsell* v. *Womack*, 8 id. 466; *Williamson* v. *Woolf*, 37 id. 298; *Sprowl* v. *Lawrence*, 33 id. 674.) The fact that the marshal had taken possession of the plaintiff's goods on the 16th of August, 1873, on a provisional warrant theretofore issued, did not 'constitute any legal consideration for the bond required and given, because the seizure was a past act done under lawful authority. (*Day* v. *Bach*, 87 N. Y. 56; *Matter of Bradner*, id. 171; Metc. on Cont. 193; 2 Pars. on Cont. 391; *Pritchard* v. *Norton*, 106 U. S. 124; *Chaffee* v. *Thomas*, 7 Cow. 358; *Farnsworth* v. *Clark*, 44 Barb. 601; *Frear* v. *Hardenbergh*, 5 Johns. 272; *Dearborn* v. *Bowman*, 3 Metc. 155; *Greene* v. *First Parish*, 10 Pick. 499; *Shaw* v. *Boyd*, 1 Stew. & Port. 83; 2 Kent, 365; 7 Johns. 87; *Duncan* v. *Hall*, 9 Ala. 128; *Jackson, Adm'r*, v. *Jackson*, 7 id. 791.) An express promise can only revive a precedent good consideration, which might have been enforced at law, through the medium of an implied promise, had it not been suspended by some positive rule of law, but can give no original right of action if the obligation on which it is founded never could have been enforced at law, though not barred by any legal maxim or statute provision. (Metc. on Cont. 178; *Wennall* v. *Adney*, 3 Bos. & Pul. 249, 252; *Smith* v. *Ware*, 13 Johns. 257; *Mills* v. *Wyman*, 3 Pick. 207; *Cook* v. *Bradley*, 7 Conn. 57; *Kenan* v. *Holloway*, 16 Ala. 53; *Barron, Adm'r*, v. *Vandvert, Adm'r*, 13 id. 232; *Vance* v. *Wells & Co.*, 6 id. 737.) The court has not the right to substitute quite another undertaking from the one assumed. (*Elmendorf* v. *Lansing*, 5 Cow. 468; Metc. on Cont. 284; 8 Mass. 276; *Post* v. *Doremus*, 60 N. Y. 371; *Barnes* v. *Peck*, 1 Port. 187,

190.) So much of the undertaking as was in excess of that required was without consideration, unless a consideration therefor could be shown, *aliunde*, to exist. (2 Bac. Abr. Cond. Notes [Bouvier's ed., 1856], 306 ; Coke Litt. [L. 3, chap. 5, § 334], 206a ; *Pindar* v. *Upton*, 44 N. H. 358 ; Com. Dig., "Bond," 1, 6, 7 ; Bac. Abr., Cond. 23 ; Coke Litt. 206b, 210b ; Touchstone, 387, 391 ; 2 Cruise's Dig. 33 ; 4 Pet. 691 ; *Whitney* v. *Spencer*, 4 Cow. 39 ; *Tuttle* v. *Kip*, 19 Johns. 194 ; *Rives* v. *Baptiste*, 25 Ala. 382 ; *Rives* v. *Toulman*, 23 id. 452 ; *Whitted* v. *Governor*, 6 Port. 335 ; *Dunn* v. *Davis*, 37 Ala. 95 ; *Garrett* v. *Logan*, 19 id. 344 ; *Sewall* v. *Franklin*, 2 Port. 493, 506 ; *Bennehan* v. *Webb*, 6 Ired. L. [N. C.] 57 ; 9 Hurls. on Bonds, Law Lib. 57 ; Shep. Touch. 375, 379.) One partner cannot bind his copartners to such an instrument as the bond in suit. It is not within the scope of the partnership. He who signs is bound, but no one else, by his signature. (*Clement* v. *Bush*, 3 Johns. Cas. 180 [1802] ; *McBride* v. *Hagan*, 1 Wend. 326 ; Pars. on Part. 178, note *g ; Cady* v. *Shepherd*, 11 Pick. 403 ; *Van Deusen* v. *Blum*, 18 id. 229.)

EARL, J. We are of opinion that the bankrupt court had the power to require this bond to be given. Under the Bankrupt Act of 1867, the U. S. District Court had general jurisdiction in all cases of bankruptcy. The powers conferred upon it were extensive, and were intended to be adequate for all the purposes of the act. Section 39 of the act provides that any person residing in the United States and owing debts exceeding $300, who shall commit any of the acts of bankruptcy in that section specified, "shall be adjudged a bankrupt on the petition of one or more of his creditors," etc. Section 40 provides that upon filing the petition "if it shall appear that sufficient grounds exist therefor, the court shall direct the entry of an order requiring the debtor to appear and show cause  *  *  *  why the petition should not be granted." Here the command of the statute is imperative. If the petition is sufficient, the court must grant the order to show cause, and cannot grant or withhold the same in its dis-

cretion. Following paragraphs of the same section provide that the court "may by injunction restrain the debtor or any other person in the meantime from making any transfer or disposition" of the debtor's property, and "from any interference therewith"; that "if it shall appear that there is probable cause for believing that the debtor is about to leave the district or to remove or sell his goods  \*  \*  \*   the court may issue a warrant to the marshal commanding him to arrest the alleged bankrupt  \*  \*  \*   and forthwith to take possession provisionally of all the property and effects of the debtor, and safely keep the same until the further order of the court." The powers conferred in these paragraphs are discretionary, to be exercised only when, in view of all the circumstances of a case, the court may conclude that the ends of justice and the purposes of the law require it. The court could in its discretion, in all cases where it had jurisdiction to grant the provisional remedies, withhold them. The petitioning creditors could never demand either of them, as matter of right. So, too, the court having granted one of these remedies, could at any time, in its discretion, recall or set it aside. Its discretionary control over either of these remedies remained until it was fully executed, and had thus become *functus officio.* These powers were very extraordinary, and their exercise might be very destructive. The warrants could be issued *ex parte* without any notice, and thus great and irreparable mischief could be done. It was certainly very appropriate that the court should possess power to take security against the damage which its process thus granted might do. As it was in the discretion of the court to withhold or grant the warrant of ceizure, it could specify the terms upon which it would grant it, and it could require compliance with such terms or else refuse the warrant. It is a universal rule in the procedure of all courts that when, in the exercise of their discretion, they may grant or withhold a favor asked for, they may impose any reasonable terms or conditions upon which the favor is to be had. What a party cannot demand of a court as matter of right, he must usually take upon such terms, proper and judicial in their nature, adapted to the

ends of justice, as the court sees fit to impose. (*Decker* v.
*Judson*, 16 N. Y. 439 ; *In re Bradner*, 87 id. 171.) The ad-
ministration of justice would be greatly impeded, and the
courts greatly embarrassed and crippled, if they did not pos-
sess the power to impose terms in such cases. This power
does not depend upon the common law, nor upon chancery
law, nor upon statutory law. It is an inherent power of courts
incident to the exercise of the discretion, and really a part of
the discretionary power.

It cannot be said that the discretion was unreasonably exer-
cised in this case when the warrant was issued upon an *ex
parte* application and the seizure under it broke up the plain-
tiff's business and would necessarily greatly damage his prop-
erty. The requirement of a bond is a usual and almost uni-
versal condition in such cases.

If the bond could have been required as a condition of issu-
ing the warrant, it could also be required as a condition for re-
fusing to recall or vacate it.

But it is claimed that this bond was arbitrarily required and
not as a condition for the refusal to recall the warrant on the
motion of Sonneborn. It is true that it was not in terms or-
dered to be given upon that condition. On the return day of
the order to show cause there were four motions, one by the
petitioners to amend their petition, one by Sonneborn to dis-
miss the proceedings, another by him to recall the provisional
warrant, and still another for the indemnity bond, and these
motions were all disposed of by one order. No one familiar
with legal proceedings can doubt that Sonneborn's motion to
the court was that the warrant be recalled or that the petition-
ers be required to give the bond, and the court refused to re-
call the warrant, but required the bond. Thus, although not
so expressed in terms, the bond was required as a condition for
the refusal to recall the warrant. If the petitioners did not
desire to give it, they should have consented to the recall of
the warrant. The bond was required because they insisted
upon maintaining the seizure of the goods, and clearly as a
condition of the maintenance of such seizure.

There was ample consideration for the bond. The petitioners maintained the seizure of the goods for their benefit, and Sonneborn was deprived of their possession and subjected to great loss and damage.

We, therefore, see no reason to impeach the validity of the bond, and it only remains to be inquired whether there was such a compliance with its conditions as to impose liability upon the obligors thereof. They contend that, before they could be made liable, it was incumbent upon the plaintiff to show that in the bankruptcy proceedings he proved that he was not bankrupt, and they claim that he did not show that. It is by no means clear that he did not show that. He had goods worth about $10,000. The only debt that appeared or was in any form alleged in the bankrupt proceedings, besides that claimed by the petitioners was one for a little less than $7,000, and when Sonneborn established that he did not owe the petitioners any thing, he showed at least *prima facie* that he was not bankrupt. But this view of the case need not be taken.

We do not assent to defendants' construction of the bond. We must construe the bond and the order in pursuance of which it was given, so far as they throw light upon each other, together, and thus arrive at the intention of the court and of the parties. (*Elmendorf* v. *Lansing*, 5 Cow. 468.) Evidently what was intended was to protect Sonneborn against the consequences of the seizure of his property in case it should turn out that the petitioning creditors had no cause to seize it. At the time the order was made, Sonneborn had obtained one verdict upon a trial upon the merits that he was not indebted to the petitioners, and he was about to proceed to another trial. That he was not a debtor of the petitioners seems to have been his main contention and reliance, and it cannot be supposed that it was the intention of the court that in case the proceedings should be dismissed on the ground that the petitioning creditors had no claim against him and thus no right to institute them, he was to have no indemnity.

The order required the bond to be upon the condition that

Sonneborn "should prove that he is not bankrupt and the proceedings against him by the said petitioning creditors shall be dismissed." Now what was meant by this language? We think the purpose to be accomplished by the bond, and the language of the bond given in pursuance of the order, show that the word "and" should be read as "or," so that Sonneborn would have the indemnity in case he proved that he was not a bankrupt *or* the proceedings were dismissed. That the parties so understood the order and requirement of the court is shown by the language of the bond. The bond follows the language of the order and then apparently in explanation of its meaning has the following language: "In case said proceedings are not dismissed or if said Meyer Sonneborn shall be adjudged a bankrupt thereunder, then this obligation to be void; otherwise to remain in full force." The last clause if written out would be thus: "But in case said proceedings shall be dismissed, or if said Meyer Sonneborn shall not be adjudicated a bankrupt thereunder, then this obligation to remain in force." Such is the plain meaning of the bond when all its language is considered, and no other construction would harmonize with the surrounding circumstances and accord with the presumed intention of the court and of all the parties interested.

Therefore, when final judgment was rendered for Sonneborn in the bankrupt proceedings, the event had happened upon which the liability of the defendants was conditioned, and the indemnity to Sonneborn should become operative.

We are, therefore, of opinion that the judgment should be reversed and a new trial granted, costs to abide event.

All concur.

Judgment reversed.