CONNA CLUFF MULLIN, RESPONDENT, v. HUSTON TROLINGER, CENTRAL STATES LIFE INSURANCE COMPANY, A CORPORATION, AND MUTUAL SAVINGS LIFE INSURANCE COMPANY, A CORPORATION, DEFENDANTS, CENTRAL STATES LIFE INSURANCE CFMPANY, A CORPORATION, AND MUTUAL SAVINGS LIFE INSURANCE COMPANY, A CORPORATION, APPELLANTS.—179 S. W. (2d) 484.

St. Louis Court of Appeals.  Opinion filed April 4, 1944.

Rehearing denied April 21, 1944.

Certiorari denied June 5, 1944.

*Jones, Hocker, Gladney & Grand* and *James C. Jones, Jr.,* for appellants.

*Lehmann & Allen* for respondent.

942

SUTTON, C.—This is a creditor's suit brought to subject the proceeds of two matured policies of life insurance, issued by Central States Life Insurance Company, to the payment of a debt owing to plaintiff by Huston Trolinger, the beneficiary in the policies. A writ of summons was duly issued and served on defendant Central States Life Insurance Company. A like writ was also issued for defendant Huston Trolinger, on which a *non est* return of service was made. No personal service was had on him in this State, and he did not enter his appearance. It appears, however, that he was personally served in Pennsylvania. A writ of attachment was issued and served on Central States Life Insurance Company.

Afterwards, plaintiff filed an amended petition in which Ray B. Lucas, Superintendent of Insurance of the State of Missouri, was named as an additional party defendant, the Central States Life Insurance Company having been adjudged insolvent and placed in charge of said Ray B. Lucas as such superintendent. Thereafter, the policy obligations of the Central States Life Insurance Company were assumed and reinsured by Mutual Savings Life Insurance Company, and by agreement of the parties that company was substituted for Ray B. Lucas as a party defendant.

The policies provide that the insured may elect to have the proceeds of the policies paid in annual, semi-annual, quarterly, or monthly, installments according to options (a), (b), or (c) instead of payment in one sum, or the insured may elect to leave the proceeds of the policies with the company in accordance with option (d).

Option (a) is as follows:

"Specified Instalments, each of such an amount as may be specified, increased by dividends as hereinafter provided, which shall continue until the proceeds, together with interest at three and one-half per cent per annum on the balance remaining, shall be exhausted as shown in the following table."

The policies further provide as follows:

"The beneficiary can neither commute, transfer or encumber any unpaid instalments nor withdraw the amount placed in trust except

upon the written authority of the insured filed with the Company during his lifetime.''

The insured elected to have the proceeds of the policies paid under option (a) in monthly installments.

One of the policies was for $2,000, and the other for $5,000, making a total of $7,000. After deducting loans and premiums due and unpaid and the first installment paid prior to the commencement of this action, there remained $6,248.34, payable in monthly installments with interest. The total of each monthly installment payable on both policies is $70 for 103 months with a final installment of $19.25.

Plaintiff obtained a judgment against defendant Huston Trolinger for $10,525, including costs, in the District Court of the County of Twin Falls, in the State of Idaho. Plaintiff's name at that time was Conna Cluff. She afterwards married Mullin. The present suit is based on that judgment.

The insured died in June, 1940. This suit was brought on August 23, 1940.

The amended petition alleges ''that in June, 1940, J. R. Trolinger, who was the father of Huston Trolinger, died, and that the said J. R. Trolinger had in the defendant Central States Life Insurance Company two policies of insurance on his life, having death benefits aggregating $7,000; that under the terms of said contracts of insurance the proceeds of said death benefits should be held in trust by said defendant Central States Life Insurance Company and were made payable to defendant Huston Trolinger at the rate of $70 per month for 103 months, and the said policies totaling $7,000 constitute a fund which the defendant Central States Life Insurance Company and defendant Ray B. Lucas as Superintendent of Insurance hold in trust for the defendant Huston Trolinger, payable as aforesaid; and that she is entitled to have the said fund subjected to the payment of the indebtedness due the plaintiff by defendant Huston Trolinger aforesaid''; and prays ''that this court render its judgment and decree that the proceeds of the insurance policies and trust fund aforesaid be subjected to plaintiff's claim against defendant Trolinger aforesaid, and that the rights of defendant Trolinger in and to said fund be sold and the proceeds applied to the satisfaction of plaintiff's claim, or that the monthly installments thereof be adjudged to be paid to plaintiff herein.''

The answer of defendants Central States Life Insurance Company and Ray B. Lucas, Superintendent of Insurance of the State of Missouri, which was adopted by defendant Mutual Savings Life Insurance Company, alleges that the arrangement for the payment of the proceeds of said policies constitutes a trust fund, and that under the terms of the optional methods of settlement provided for in said policies, the proceeds of said policies on deposit with the Central States Life Insurance Company are not subject to commutation, trans-

fer, encumbrance, or withdrawal, by the said Huston Trolinger as beneficiary in said policies, it being so expressly provided in and by the terms of the optional methods of settlement incorporated in said policies; that the balance of the proceeds of said policies remaining on deposit with the Central States Life Insurance Company are exempt from garnishment and attachment and are not subject to the satisfaction of the judgment or indebtedness which the plaintiff alleges is due and owing by said Huston Trolinger to plaintiff herein; that defendants Central States Life Insurance Company and Ray B. Lucas, Superintendent of the Insurance Department of the State of Missouri, are merely stakeholders of the proceeds of said policies and that they are ready and willing to pay the monthly installments under said policies as may be ordered and directed by a proper judgment and decree of this court; and prays that defendants be dismissed with their costs.

Upon the trial the court found that the combined net total amount of both policies due as a death claim was $6,318.34, which under the terms of the method of settlement was retained by the Central States Life Insurance Company to be paid to the defendant Huston Trolinger in monthly installments of $70 each, the first installment of which was paid by said Central States Life Insurance Company on August 15, 1940, leaving a balance of the principal sum of $6,248.34 on deposit with said company to be paid in monthly installments of $70 each for 103 months, with a final fractional installment of $19.25 due April 15, 1949, said installments to be payable monthly on the 15th day of each month, the total of all said installments aggregating, including interest on the balance and principal sum, the sum of $7,229.75. And the court gave judgment in favor of plaintiff against defendant Huston Trolinger for the sum of $10,525, to be collected only out of the proceeds of the insurance policies, and ordered and adjudged that plaintiff has a lien upon said fund and proceeds and the defendants Central States Life Insurance Company and Mutual Savings Life Insurance Company be and they are ordered to pay over to plaintiff the amount of the installments which have matured and to pay over to her hereafter all subsequent installments as they mature, said payments to be applied by the plaintiff upon this judgment.

Defendants Central States Life Insurance Company and Mutual Savings Life Insurance Company appeal.

Respondent moves a dismissal of the appeal on the ground that the insurance companies are not aggrieved parties within the purview of section 1184, Revised Statutes Missouri 1939. In argument she called attention to the allegation in the answer that the insurance companies are merely stakeholders of the proceeds of the policies, and that they are ready and willing to pay the monthly installments under said policies as may be ordered and directed by a proper judgment and decree of the court. She insists that the companies have thus

formally assumed the position of mere stakeholders. She likens the answer to a bill of interpleader, which admits the fund in their hands is payable to one of the other of two parties, and asks the court to determine to which of the parties it must make payment, and that the insurance companies, having obtained in the judgment of the court what it asked for, have no right of appeal therefrom.

In determining the question thus raised, it will be helpful to examine the answer further. It will be observed that the answer alleges that the arrangement for the payment of the proceeds of the policies constitute a trust fund and that under the optional methods of settlement provided for in the policies the proceeds of the policies are not subject to commutation, transfer, encumbrance, or withdrawal, by the beneficiary, it being so expressly provided in and by the terms of the optional methods of settlement incorporated in the policies, and that the balance of the proceeds of said policies are exempt from garnishment and attachment and are not subject to the satisfaction of the judgment and indebtedness which the plaintiff alleges is due and owing by the beneficiary to plaintiff, and prays that defendants be dismissed with their costs.

It is quite evident from the allegations of the answer that the insurance companies did not take a neutral attitude, but insisted that the plaintiff could not subject the fund in their hands to the payment of the beneficiary's debt. Nor did the insurance companies obtain in the judgment what they asked for. They did not ask that the court determine the rights of the parties with respect to the fund in the hands of the companies and give judgment against the companies for the payment of the installments to the party that the court adjudges entitled thereto, but they averred that plaintiff was not entitled to judgment against them, and prayed to be dismissed with their costs. Instead, the plaintiff got a judgment against them for $7,229.25.

In these respects, and in others as well, this case is materially different from State ex rel. St. Louis Union Trust Co. v. Sartorius, 350 Mo. 46, 164 S. W. (2d) 356, relied on by respondent.

Appeals are purely statutory, and when challenged the appellant must be able to point to the statute allowing the same. But appeals are favored, and statutes granting that right are to be liberally construed. [Fenton v. Thompson (Mo.), 176 S. W. (2d) 456, l. c. 459.] And it has been held that where a doubt exists as to the right of appeal such doubt should be resolved in favor of the right. [Victor Talking Machine Co. v. George (C. C. A. N. J.), 69 F. (2d) 871; First National Bank v. Lagrone, 164 La. 907, 114 So. 832; City of Abilene v. American Surety Co. (Tex. Civ. App.), 73 S. W. (2d) 616.]

We conclude that the insurance companies were properly granted an appeal.

The policy provision with which we are here concerned closely resembles a spendthrift trust, if, indeed, it is not in effect just that. Certainly it is in the nature of a spendthrift trust.

Both the respondent and appellants plead that the proceeds of the policies constitute a trust fund held in trust by the appellants and made payable to the beneficiary in monthly installments.

In Blum v. New York Life Insurance Co., 197 Mo. 513, 1. c. 523, 95 S. W. 317, our Supreme Court said that in ordinary life insurance where no power of divestiture is reserved, the general doctrine prevails that the issue of the policy raises an "irrevocable trust" in favor of the beneficiary.

In 29 Am. Jur. 950, it is said that the designation of a beneficiary in a policy of life insurance has been deemed to be "in the nature of a declaration of trust."

In Vance on Insurance (2 Ed.), p. 555, it is said that most of the earlier and better considered cases base the right of the beneficiary "upon a trust declared by the insured promisee when he takes the insurer's promise for the use of the beneficiary."

In Kruger v. John Hancock Life Insurance Co. (Mass.), 10 N. E. (2d) 97, the court said: "The designation of a beneficiary named in a policy of life insurance procured by the insured is in the nature of a declaration of trust."

See, also, to the same effect: Missouri State Life Ins. Co. v. California State Bank, 202 Mo. App. 347, 216 S. W. 785; Central Bank of Washington v. Hume, 128 U. S. 195; U. S. Casualty Co. v. Kacer, 169 Mo. 301, 1. c. 313, 69 S. W. 370.

In Tyler v Treasurer & Receiver General, 226 Mass. 306, 1. c. 308, 115 N. E. 309, the court said:

"While, speaking with technical accuracy, a beneficiary is not a party to a policy of life insurance, and could not at common law maintain an action in his own behalf, yet he has an equitable interest in the policy and can maintain an action for his own benefit in the name of the personal representatives of the insured, and by statute is enabled to bring an action in his own name. . . . It has been said that, apart from any statutory provision, the designation of a beneficiary in a policy of life insurance is in the nature of an executory trust for his benefit of which he cannot be deprived without his consent."

So, in this State, but for our statute, section 849, Revised Statutes 1939, which provides that every action shall be prosecuted in the name of the real party in interest, the beneficiary, to recover on a life insurance policy, would have to sue, as at common law, in the name of the personal representative of the insured.

Respondent contends that notwithstanding by her suit she seeks to subject to the payment of the beneficiary's debt what she denominates as a trust fund, the provision of the policies that the beneficiary

can neither commute, transfer, or encumber, any unpaid installments, is void.

It is well-settled law that the owner of property cannot transfer his property to another for the owner's use and benefit and thereby withdraw the property from the claims of his creditors. But it is equally well settled that the owner of property may transfer it to another for the use and benefit of a third person and may lawfully provide that pending the receipt of such property by the donee it shall not be subject to the claims of the donee's creditors.

In 25 Ruling Case Law, 352, it is said that the weight of authority is to the effect that the founder of a spendthrift trust "may secure the enjoyment of it to the objects of his bounty by providing that it shall not be alienable by them or become subject to be taken by their creditors, and that this intention when clearly expressed by him will be carried out."

At page 353 it is further said:

"The donor or devisor, as the absolute owner of the property, has the right to prescribe the terms on which his bounty shall be enjoyed, unless such terms are repugnant to the law, and inasmuch as such a gift or devise takes nothing from the prior or subsequent creditors of the beneficiary to which they previously had the right to look for payment, they cannot complain that the donor has provided that the property or income shall go or be paid personally to the beneficiary and shall not be subject to the claims of creditors. The donor is allowed so to control his bounty, through the creation of the trust, that it may be exempt from liability for the donee's debts, not because the law is concerned to keep the donee from wasting it, but because it is concerned to protect the donor's right of property."

In Jamison v. Mississippi Valley Trust Co. (Mo.), 207 S. W. 788, l. c. 789, the court said:

"The right of disposition permits any person to give property to another upon such conditions and restrictions as he pleases. The creditors of the beneficiary of a trust have no right to complain of a gift to the beneficiary which restricts the use in such manner that they cannot reach it. The creditors of the donor only are concerned."

In Nichols v. Eaton, 91 U. S. 716, l. c. 725, the court said:

"But the doctrine, that the owner of property, in the free exercise of his will in disposing of it, cannot so dispose of it, but that the object of his bounty, who parts with nothing in return, must hold it subject to the debts due his creditors, though that may soon deprive him of all the benefits sought to be conferred by the testator's affection or generosity, is one which we are not prepared to announce as the doctrine of this court."

At page 727 the court further said:

"Why a parent, or one who loves another, and wishes to use his own property in securing the object of his affection, as far as prop-

erty can do it, from the ills of life, the vicissitudes of fortune, and even his own improvidence, or incapacity for self-protection, should not be permitted to do so, is not readily perceived.''

In Broadway National Bank v. Adams, 133 Mass. 170, l. c. 174, the court said:

''The rule of public policy which subjects a debtor's property to the payment of his debts, does not subject the property of a donor to the debts of his beneficiary, and does not give the creditor a right to complain that, in the exercise of his absolute right of disposition, the donor has not seen fit to give the property to the creditor, but has left it out of his reach.''

In re Barker's Estate, 159 Pa. St. 518, l. c. 525, the court said:

''With regard to principal, where there is a present gift, in possession, of the entire beneficial ownership, a trust to protect against creditors is invalid: Keyser's Ap., 57 Pa. 236; but the power of alienation may, unquestionably, be withheld in the case of a contingent interest before it vests, even in England: Large's Case, 2 Leonard, 82; 3 Leonard, 182; Barnett v. Blake, 2 Dr. & Sm. 177; and so it would seem in Pennsylvania, in case of a vested interest, prior to its coming into possession, or where the restraint is confined to a limited period not transgressing the rule against perpetuities: McWilliams v. Nisly, 2 S. & R. 507, 513. [See also Jauretche v. Proctor, 48 Pa. 472.] In the recent case of Beck's Ap., 133 Pa. 51, it was held that a provision that an absolute legacy should not be liable to attachment is good so long as the legacy remains in the hands of the executor; and this was followed in Goe's Est., 146 Pa. 431.''

In Crossman v. Rauch, 263 N. Y. 264, l. c. 273, the insured elected to have the proceeds of his life insurance policy paid to his wife in monthly installments. The policy provided that ''the beneficiary cannot assign or commute the payments herein provided, or any of them, unless such right shall be given by the insured in writing and shall be endorsed upon or attached to the contract by the company at its home office during the lifetime of the insured.'' The court, after holding the proceeds of the policy not subject to garnishment or execution for the debt of the beneficiary under the New York Statute, said:

''Not only do we believe that the entire amount of the monthly payments is exempt for the reasons stated, but such payments are exempt for the further reason that the agreement expressly provides that 'the beneficiary cannot assign or commute the payments herein provided.' 'The payments herein provided' are monthly payments sought to be reached under the execution. As they cannot be voluntarily assigned, they cannot be subject to levy by execution.'' [See, also: Tate v. Hain (Va.), 25 N. E. (2d) 321; Michaelson v. Sokolove, 169 Md. 529; Holowaty v. Prudential Insurance Co., 282 Ill. App. 584; Hyde v. Woods, 94 U. S. 523.]

In Partridge v. Cavender, 96 Mo. 452, 9 S. W. 785, a testator gave by his will property in trust for his son for life and directed the trustees to pay the income to the son semi-annually, on his personal receipt therefor, without his said son having any power to sell, assign, or pledge, the same previous to the payment thereof to him. It was held that neither the accrued income in the possession of the trustees, nor the accruing income could be reached by the son's creditors or be assigned by him before it was paid over to the son. It was also held in that case that if the beneficial interest is inalienable it cannot be taken for the devisee's debts or reached by equitable garnishment. It was further held that what could not be voluntarily assigned was not subject to involuntary assignment.

It would seem that if the income of a trust fund cannot be voluntarily assigned then for a stronger reason it cannot be involuntarily assigned.

The right of disposition of property is a fundamental attribute of ownership, and any hindrance of that right by the courts directly affects a fundamental property right. Why may not a father with his own money paid to an insurance company provide his son with a fund to be paid to him by the company in installments in such manner that it may not be reached by his creditors before the installments become payable and are paid over to the son? What business is it of the son's creditors how the father disposes of his money? He owes them nothing. By what rule of reason or authority may the son's creditors be permitted to successfully assert that the father in using his own money to provide a fund for his son with an insurance company must do so in such manner that it may be snatched up by them to satisfy their claims even before the fund becomes payable and has been paid over to the son?

We are not concerned here with a case where the donor of property seeks to restrain the alienation of the property after the donee has come into the full possession, control, and enjoyment thereof.

The purpose and effect of the restraint imposed by the policy provision in this case is to avoid alienation of the fund before the installments thereof becomes payable and are paid over to the beneficiary. The language of the restraining clause is, "any unpaid installments."

There is no substantial merit in the suggestion of counsel that the provision restraining alienation found in the policies does not apply to option (a), but applies only to option (d). Respondent says this is so because the restraining clause immediately follows option (d). But there are two paragraphs immediately following option (d) and intervening between option (d) and the restraining clause, which necessarily refer to other options. One of them expressly refers to options (a), (b), and (c). Moreover, the restraining clause expressly prohibits the alienation of unpaid "installments". The word

"installments" does not appear anywhere in option (d), but does appear in all three of the other options.

We think the restraining clause of the policies is valid, and should be given effect by the courts.

The motion to dismiss the appeal should be overruled, and the judgment of the circuit court should be reversed.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The motion to dismiss the appeal is accordingly overruled, and the judgment of the circuit court is reversed. *Hughes, P. J.,* and *McCullen* and *Anderson, JJ.,* concur.

### ON MOTION FOR A REHEARING.

SUTTON, C.—Respondent, on motion for a rehearing, says that our opinion is in conflict with State ex rel. Union Trust Co. v. Sartorius, 350 Mo. 46, 164 S. W. (2d) 356, in holding that the insurance companies are entitled to appeal. Our opinion distinguishes that case in some respects. There is another distinguishing feature which ought not to be overlooked. The basis on which it is said the insurance companies are not aggrieved parties is the acquiescence of the beneficiary in the judgment appealed from. It is said that in view of the fact that the judgment, if not appealed by either the beneficiary or the companies, would be binding on the beneficiary and a full protection to the companies, it is no concern of the companies to question whether or not the judgment is a proper one; that the companies are not harmed by being adjudged to pay the installments to the respondent rather than to the beneficiary. This overlooks the fact that the one determinative issue on the trial was the right or not of the beneficiary to voluntarily alienate the unpaid installments. Why, then, must it necessarily be said that the companies had fully discharged their obligations under their contracts with the insured by merely contesting the issue in the trial court, without appealing to a court of last resort for a final decision of the issue, though the beneficiary acquiesced in the judgment? There was no such issue in the Sartorius case.

Respondent further says that our opinion is in conflict with Kessner v. Phillips, 189 Mo. 515, 88 S. W. 66. That case is so different on its facts that we do not regard it as in point here. It did not involve any such contract as a life insurance policy. It involved a deed conveying real estate. It conveyed the real estate to Hudspeth in fee simple with a condition that the real estate should not be liable for Hudspeth's debts, and that he should have no right, power, or authority to sell, encumber, or dispose of the real estate for a period of thirty years, except to dispose of the same by will, and that after the expiration of thirty years, the real estate should vest absolutely in Hudspeth free and clear of all the conditions named,

to use, enjoy, and dispose of in any manner he might deem proper. There was no trustee or other intermediary. The conveyance was made direct to Hudspeth. An absolute estate in fee simple was vested in him, and he was given the right of possession, of managing and controlling the real estate, and of receiving the whole income therefrom. In other words, the conveyance to Hudspeth was of the whole legal title, with all the incidents and rights appurtenant thereto, with only a futile attempt to annex repugnant conditions thereto. He was in full possession and enjoyment of the property. The court, holding the property subject to Hudspeth's debts, said:

"Ever since the statute of *quia emptores* was enacted the rule of law has been that, 'after an absolute conveyance in fee simple, a clause providing that the grantee shall not mortgage or dispose of the property, is repugnant and void.' "

The court further said:

"It is the policy of the law in this State to permit the creation of spendthrift trusts, and to allow the owner of property to apply a portion, or the whole thereof, to the maintenance and support of those he wishes to provide for and who are not able to control and manage their own affairs."

In the recent case of Chelsea-Wheeler Coal Co. v. Marvin (N. J.), 35 Atl. (2d) 874, the policy provision was substantially the same as the provision with which we are here concerned, and the court held that the insurer was bound to carry out its obligations under the policy in accordance with its terms. In that case the court said:

"Our attention has not been called to any case in New Jersey dealing with the right to restrain alienation of an insurance fund through the medium of the insurance contract itself. We think, however, that there is a close analogy between the situation subjudice and the type of restraint on alienation or assignment found in 'spendthrift trusts.' Parenthetically we point out that it is immaterial whether or not the beneficiary is in fact a spendthrift."

Respondent urges in argument that we are concerned here with merely an ordinary indebtedness payable in installments. We do not think this is so. Just how unpaid installments, which the beneficiary "can neither commute, transfer, or encumber," can be regarded as an ordinary indebtedness, we are unable to see. It is clear that the provision withholds ownership until the installments are paid over to the beneficiary. The provision does not attempt to preclude alienation after the installments are paid.

The Commissioner recommends that respondent's motion for a rehearing be overruled.

PER CURIAM:—The foregoing opinion of Sutton, C., is adopted as the opinion of the court. Respondent's motion for a rehearing is accordingly overruled. *Hughes, P. J.*, and *McCullen* and *Anderson, JJ.*, concur.