ROSS, Circuit Judge.
First Northwestern Trust Company of South Dakota, the trustee of the Paul Lex Quarnberg Family Trust, initiated this action for a declaratory judgment of the rights, liabilities, obligations and entitlements of the named party defendants to the income of the trust. In particular, First Northwestern sought judicial determination of the issue of whether the trustee in bankruptcy of one of the beneficiaries of a discretionary spendthrift trust succeeds to that beneficiary’s interest in the income of the trust.
The trust agreement in question was executed in 1970 by C. A. Quarnberg. It established an irrevocable trust in the amount of $250,000 to provide for the necessary and ordinary living expenses of the Paul Lex Quarnberg family, and to provide for the educational expenses of the children. The agreement contained a spendthrift clause[1] and several provisions granting the trustee the authority to distribute the income of the trust in a discretionary fashion.
On May 22, 1973, Paul Lex Quarnberg and his wife, Margaret, entered into two agreements with the Internal Revenue Service, assigning portions of their income payments from the trust to satisfy their federal tax liabilities. On June 29, 1973, upon the petition of the trustee for directions, the South Dakota Circuit Court for the Seventh Judicial Circuit approved the agreements and ordered First Northwestern’s predecessor in interest to disburse to the IRS those portions of the trust income which normally would be paid to Paul Lex Quarnberg and Margaret Quarnberg in accordance with the terms of the trust agreement.
On January 31,1979, Paul Lex Quarnberg filed a voluntary petition in bankruptcy, listing debts of over $400,000 and assets of less than $5,000. Robert A. Warder, the appellant in this action, was named trustee in bankruptcy. On February 28, 1979, Warder requested that First Northwestern pay to him all of the trust income, including that portion assigned to the IRS, for distribution to the creditors of Paul Lex Quarnberg. First Northwestern filed this suit to determine the rights of each of the parties to the trust income. Robert Warder, the IRS and the Quarnbergs, as beneficiaries of the trust, were all named as defendants.
In the district court proceedings,[2] Warder claimed that the title to the proceeds of the trust had passed to him, in his capacity as trustee in bankruptcy, pursuant to section 70(a) of the Bankruptcy Act, 11 U.S.C. § 110(a).[3] In its Judgment and Order of August 13, 1979, however, the district court ruled that Warder had succeeded to no rights in the trust income:
It appears to the Court that the above-mentioned trust is a spendthrift trust un *390 der which the Plaintiff, as trustee, has control over the disbursement of the trust funds. Furthermore, Defendant Paul Lex Quarnberg, the bankrupt, has no vested right in the trust which allows him to transfer or assign any rights to the trust income. As such, the Defendant Trustee in Bankruptcy has no right to the trust income.
Warder appeals from the final decision of the district court.[4]
On appeal, Warder again raises the argument that the income disbursements from the trust are “property” of the bankrupt within the meaning of § 110(a)(5) of the Bankruptcy Act, and that the entire interest in that income should have passed to the trustee in bankruptcy in accordance with the terms of the Act. Warder offers three separate theories in support of this contention.
Under the first theory, Warder claims to have succeeded in interest to the proceeds of the trust because assignments of the trust income to the IRS have already been approved and confirmed by the South Dakota Circuit Court. Therefore, according to the argument, the proceeds are property which the bankrupt could “by any means have transferred” within the meaning of § 110(a)(5). Warder further suggests that the holding in that case binds this court to the conclusion that the proceeds of the trust are “assignable” by virtue of the doctrine of res judicata, and that the parties to this law suit are estopped from challenging the validity of that decision because they were participants in the state court proceeding. Second, Warder claims that the South Dakota Supreme Court, which has not in any previous case ruled upon the issue, would not enforce the spendthrift trust provision in the subject trust. Finally, Warder suggests that the same principles which operate to make the proceeds of a spendthrift trust available for the attachment of a federal tax lien apply equally to bankruptcy proceedings.
Warder’s first theory is without merit. In arguing that the South Dakota Circuit Court has already determined that the proceeds of the Paul Lex Quarnberg Family Trust are “assignable” and that this court is bound by that decision in the disposition of this appeal, Warder fails to give due consideration to the well established legal principle that the income from a spendthrift trust is not immune from federal tax liens, notwithstanding any state laws or recognized exemptions to the contrary. Leuschner v. First Western Bank and Trust Co., 261 F.2d 705, 707 (9th Cir. 1958); United States v. Dallas National Bank, 152 F.2d 582, 585 (5th Cir. 1945). The same is true even where, as in the present case, the elements of a spendthrift trust are combined with provisions granting discretionary powers of distribution to the trustee:
Whether the trust was created by the taxpayer or by a third party, no spendthrift clause in the instrument itself and no exemption provided by state law can immunize such beneficial rights from the federal tax collector. If the taxpayer’s rights are subject to the discretion of the trustee, the tax collector can reach whatever the trustee elects to distribute * *.
Plumb, Federal Liens and Priorities — Agenda for the Next Decade II, 77 Yale L.J. 605, 617 (1968). Accordingly, it is reasonable to conclude that the South Dakota Circuit Court decision affirming the agreements between the Quarnbergs and the IRS was founded upon this narrow legal principle relating to federal tax liens, especially where there is no evidence to indicate that the district court even reached the issue of whether the proceeds of the trust are, for general purposes, “assignable.” Warder has thus failed in his burden of proving that the South Dakota decision and the present appeal are based on the same cause of action, and therefore the doctrine of res judicata is in no way binding on this court or the parties before it in the present appeal. Howard v. Green, 555 F.2d 178, 181 (8th Cir. 1977).
*391 This conclusion is supported by our review of the case law involving similar claims of creditors. Most courts which have faced the issue before us have held that “a spendthrift restriction is valid and prevents property subject to the restriction from being alienated or subject to levy.” Mickelson v. Detlefsen, 466 F.Supp. 161, 164 (Minn. 1979). Therefore, as long as property is held in trust and is subject to the terms of a spendthrift provision, the general rule is that the property may not be reached by the creditors of a beneficiary of that trust. Once the proceeds are distributed to the beneficiaries, of course, they escape the protection of the clause and may be reached by creditors. But the general rule which protects funds held in trust from the creditors of a beneficiary of a spendthrift trust is even applicable in the context of bankruptcy proceedings:
The effect of the trust provision is that upon the bankruptcy of the beneficiary his equitable interest in the income and principal of the trust estate, being nonassignable and immune from judicial process under [state] law, does not pass to the trustee of the bankruptcy estate, under Section 70(a)(5) of the Bankruptcy Act, 11 U.S.C. § 110(a)(5), and title remains in the trustee of the spendthrift trust.
In re Ahlswede, 516 F.2d 784, 786 (9th Cir.), cert. denied, 423 U.S. 913, 96 S.Ct. 218, 46 L.Ed.2d 142 (1975). See Eaton v. Boston Safe Deposit & Trust Company, 240 U.S. 427, 36 S.Ct. 391, 60 L.Ed. 723 (1916). We point out also that the broad discretionary powers of the trustee under the agreement in this case represent to us a further restraint upon the ability of the beneficiaries of this trust to assign or in any manner to alienate the income or the principal of the trust, and represents as well a further immunity from judicial process. See Brownell v. Leutz, 149 F.Supp. 98, 103 (N.D.1957). Consequently, we find it highly unlikely that the South Dakota Circuit Court determined that the proceeds of the Paul Lex Quarnberg Family Trust are “assignable” for any purpose other than to satisfy federal tax liabilities.
 The generally accepted rule which favors the enforcement of spendthrift trust provisions is not without its limitations, however. The federal bankruptcy laws defer to the authority of the individual states in determining what property is exempt from the estate of the bankrupt. See Eaton v. Boston Safe Deposit & Trust Company, supra, 240 U.S. at 429, 36 S.Ct. at 392. Therefore, the validity of an exemption such as a spendthrift provision is determined with reference to state law. And, as the parties to the present appeal point out, the South Dakota Supreme Court has not yet ruled on the validity of spendthrift trust provisions. Warder’s second theory, therefore, is that spendthrift provisions would not be enforced under South Dakota law.
In support of this theory, Warder submits that the existing state law provides ample evidence that the state supreme court would hold spendthrift provisions invalid. As an example, Warder claims that spendthrift trust provisions go against the grain of public policy expressed in the state’s statutes relating to execution of judgments. Section 15-18-17 of the South Dakota Codified Laws (SDCL) sets out the property subject to levy on execution as follows:
All property and interests therein and rights appurtenant thereto, tangible or intangible, including shares or interests in any corporations, credits, choses in action, and whether capable of manual delivery or not, belonging to the party against whom the execution was issued, and not exempt by law may be taken on execution and sold or otherwise applied to the satisfaction of the judgment as provided by law.
Warder claims that the terms of this statute effectively render all property of the bankrupt available for execution unless specifically exempted by law. And since no specific exemption currently exists in South Dakota for spendthrift trust provisions, it is suggested that they are invalid by virtue of this broad interpretation of the statute.
*392 Warder also cites the case of Swan v. Gunderson, 51 S.D. 588, 215 N.W. 884, 885 (1927) as authority for his strict interpretation of § 15-18-17. In that case, the South Dakota Supreme Court was called upon to construe the terms of the predecessor to the statute in invalidating a codicil to a will. The will devised undivided one-eighth interests in real property to the testator’s heirs, subject to a life estate held by the testator’s wife. The invalid codicil sought to isolate the devise of the real property from the creditors of the heirs by providing that the property should pass “free and clear from any debts, or obligations for which any one of them might be liable at the time of my death.” The court determined, however, that the state’s constitution “impliedly contemplates that all property of a debtor, excepting the property exempted by general laws * * * shall be subject to be reached by his creditors.” And in light of the broad language of the predecessor to § 15-18-17, relating to the availability of property for execution, the court concluded that
[i]t is elementary that no testator or other nonsovereign donor, by a condition or restriction in a devise or gift of the absolute legal title to real property, can take such property out from under the operation of these statutes and pro tanto repeal them. See Tiffany, Real Property (2d Ed.) § 592.
Id. Warder suggests that the enforcement of a spendthrift provision such as the one in the present case would also circumvent the state’s long-standing policy of making a debtor’s property available to his or her creditors.
We find Warder’s arguments unpersuasive. In the first place, the approach suggested by the trustee in bankruptcy is one which has been rejected by the overwhelming majority of courts in this country.[5]
More importantly, however, we find that the legal authority cited by the trustee in bankruptcy does not support the strict rule which we are urged to adopt in the present appeal. Although we recognize that “all property of a debtor shall be subject to be reached in proper time and manner by his creditors, save only such property as may be legally exempt,” Mohawk Rubber Company of New York v. Cronin, 62 S.D. 249, 252 N.W. 642, 643 (1934), we do not believe that this policy extends to the income of discretionary trust funds, which is held in trust for the ordinary and necessary living expenses of the beneficiary, at least until such funds are actually received and held by the beneficiary.[6] Such income clearly does not constitute “property” within the normal meaning of the state’s statute defining property which is available for execution.
It is clear from the face of the trust agreement that the beneficiaries of the Paul Lex Quarnberg Family Trust have no rights or interest which could be levied upon by creditors. Even aside from the spendthrift provision, there are several other clauses in the trust agreement which render the beneficiaries’ right to the income contingent, at best. In the first place, the beneficiaries are entitled only to the income of the trust, unless extraordinary circumstances permit an invasion of the principal. This right is necessarily limited by the ability of the trust to earn an income, and the trust yields no benefits to the beneficiaries unless and until income is earned. Second, the rights of the beneficiaries are also contingent upon the discretionary authority of *393 the trustee. The trust agreement gives the trustee the authority to distribute the trust funds in unequal amounts, and the agreement specifically provides that the trustee is only obliged to disburse “such amounts as in the sole discretion of the Trustee is necessary, reasonable and proper, to such members of the Paul Lex Quarnberg family requiring such funds upon proper proof of such need to the satisfaction of said Trustee * * *.” There is, therefore, no identifiable or ascertainable interest or right in the income until these two contingencies are met. Accordingly, we conclude that the enforcement of a spendthrift provision under these circumstances does not operate to remove property from the creditors of the beneficiaries which otherwise would be available.[7]
In light of the foregoing, we conclude that no overriding policy of the state of South Dakota requires us to hold the spendthrift provision in the present appeal invalid. Consequently, we find it reasonable to assume that the South Dakota Supreme Court would enforce the spendthrift provision in this case and thereby adopt a policy consonant with that of the vast majority of the states which have considered the issue.
Warder’s final theory is also without merit. It is argued that the principles of law which operate to expose the proceeds of a discretionary spendthrift trust to federal tax liens should similarly operate to expose those proceeds to the trustee in bankruptcy. A close inspection of the bankruptcy statutes indicates that this position is clearly untenable, irrespective of the operation of the federal tax laws. Section 110(a)(5) of the Bankruptcy Act indicates that the trustee in bankruptcy succeeds to those rights “which prior to the filing of the petition [the bankrupt] could by any means have transferred or which might have been levied upon and sold under judicial process against him * * *.” We have already pointed out that the beneficiaries of the Paul Lex Quarnberg Family Trust had no present interest in the income of the trust until such time as the income accrued and until such time as the trustee distributed the income. Therefore, the beneficiaries of the trust had no interest in the future income disbursements “prior to the time of the filing of the petition,” and we conclude that the trustee in bankruptcy thus succeeded to no rights in the trust income.
We have examined the other issues raised on appeal and find them similarly without merit. Accordingly, the decision of the district court denying the trustee in bankruptcy’s claims to the income of the Paul Lex Quarnberg Family Trust is hereby affirmed.

. Section 4 of the trust agreement reads as follows:
Spendthrift Clause. No interest of any beneficiary under this trust, and no interest or property payable or distributable under this trust, whether it be income or principal, shall be subject to pledge, assignment, sale or transfer in any manner, nor shall any beneficiaries herein have the power in any manner to anticipate, charge or encumber his interest herein, either in income or principal, nor shall such interest of any beneficiary be liable or subject to any debts, contracts, liabilities, engagements or torts of such beneficiary, whether voluntary or involuntary, or for any claims of any kind or nature, legal or equitable, against any such beneficiary. No such beneficiary shall have the power or right to divert or cause the trust funds, whether income or principal, to be expended to any other purpose other than those purposes specifically provided for herein.

. The Honorable Andrew W. Bogue, United States District Court for the District of South Dakota.

. 11 U.S.C. § 110(a) reads, in part, as follows:
(a) The trustee of the estate of a bankrupt and his successor or successors, if any, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this title, except insofar as it is to property which is held to be exempt, to all of the following kinds of property wherever located * * * (5) property, including rights of action, which prior to the ftling of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered * * *.
(Emphasis supplied.)

. Jurisdiction in this court is predicated on 28 U.S.C. § 1291.

. Nichols v. Eaton, 91 U.S. 716, 23 L.Ed. 254 (1875). Accord, Mullin v. Trollinger, 237 Mo. App. 939, 179 S.W.2d 484, 488-89 (1944); In the Matter of Campbell’s Trusts, 258 N.W.2d 856, 863 (Minn. 1977); First Bank & Trust v. Goss, 533 S.W.2d 93, 95 (Tex.Civ.App.1976); First National Bank of Omaha v. First Cadco Corp., 189 Neb. 734, 205 N.W.2d 115, 118 (1973).

. It should be noted that the codicil invalidated in Swan v. Gunderson, 51 S.D. 588, 215 N.W. 884 (1927), attempted to protect real property devised to the heirs even after that property interest had vested in the heirs. “[T]he imposing of such a condition or restriction upon the otherwise absolute gift of legal title to real property was utterly beyond the power of the testator.” Id., 215 N.W. at 885. Under the circumstances, we feel that the case has little bearing on the present appeal.

. This conclusion is in accord with decisions of the South Dakota Supreme Court which hold that a creditor cannot attach or garnish contingent interests of a debtor which are held for him in equity by a third party such as an executor or an administrator. See Woodbine Sav. Bank v. Yager, 58 S.D. 542, 237 N.W. 761, 762 (1931), aff’d on rehearing, 61 S.D. 1, 245 N.W. 917 (1932):
The right of an heir or devisee to share in the property of an estate is contingent upon there being a balance in the possession of an executor or administrator for distribution after payment of all debts and expenses of administration properly chargeable against the estate. Until a decree of distribution is made, the heir or devisee has no present right to the property of the estate.