Lippincott et al., Appellants, *v.* Lippincott et al.

Argued April 14, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*E. C. Shapley Highley,* of *Highley & Semans,* for Alice Louise Lippincott, appellant in No. 137 and appellee in No. 140.

*Paul Maloney,* with him *Evans, Bayard & Frick,* for Mary W. Lippincott, appellee in No. 137 and appellant in No. 140.

*Duane, Morris & Heckscher* and *John B. Martin,* for trustee, garnishee.

*James S. Feight,* for defendant.

OPINION BY MR. JUSTICE DREW, May 22, 1944:

These cross appeals arose out of an attachment execution issued by a divorced wife to recover, out of a life interest of her former husband in a spendthrift trust, alimony due her under a decree of a foreign state.

From the agreed statement of facts filed by counsel under our Rule No. 56, the following facts appear: James Janney Lippincott is the beneficiary of a trust established by his mother by a deed of trust dated April 20, 1927, the spendthrift clause providing that "so far as may be permissible in law" the income and principal of the trust "shall not be in any way or manner subject or liable to . . . anticipation, sale, pledge, debts, contracts, engagements or liabilities, and shall not be subject or liable to attachment or sequestration under any legal or equitable or other process." Mary, the first wife of this beneficiary and the mother of his now two adult children, on July 26, 1919, secured an absolute divorce

from him, with alimony of $150 a month, after personal service, by decree of the Supreme Court of New York. On January 2, 1921, he married his second and present wife, Alice, whom he deserted, without cause, on April 20, 1928. There were no children of this marriage. Personal service having been secured, Alice obtained from the Superior Court of Los Angeles County, California, on July 30, 1935, an order of support in the sum of $80 a month, against her husband, and after that court had entered judgments from time to time for accumulated arrearages, she brought thereon three suits in foreign attachment in the Court of Common Pleas of Philadelphia County, Pennsylvania, attaching his interest in the trust—the first was issued in 1936, the second in 1941 and the third in 1943. The judgment entered in the first of these actions against the trustee, Girard Trust Company, has been satisfied in full; but because the income of the trust was insufficient and also because this controversy arose, the second has been only partially satisfied thus far, and nothing has been paid on the third.

Before service of the third writ of foreign attachment by Alice on the trustee, an action in assumpsit was brought by Mary, the divorced wife, in the Court of Common Pleas of Philadelphia County, against Lippincott, to recover arrearages of many years of alimony on the order of the New York Court. Through counsel he entered his appearance, and judgment was later entered against him for failure to file an affidavit of defense. Mary then issued an attachment execution against her former husband's interest in the trust, and the writ was served on the trustee on April 13, 1943, thirteen days after Alice's third writ of foreign attachment had been served.

The trustee, after service of Mary's writ, refused to make further payments to Alice, and she secured a rule on it to show cause. Mary then obtained a rule for judgment against the trustee as garnishee. By stipulation of counsel these matters were consolidated, and the

learned court below made absolute both rules, but held that Mary's judgment was junior in lien to the judgments entered against the trustee in Alice's second and third foreign attachment proceedings, both of which must be satisfied in full before Mary was to receive any payment whatever. These cross appeals by Alice and Mary followed but only as to the judgment entered in favor of Mary.

Alice contends that the court erred in subjecting, to her detriment, the interest of her husband in the trust to attachment for alimony of his former wife; while Mary argues that it was error to postpone the lien of her judgment to those of the beneficiary's present wife. Thus, the question for determination is—Can the interest of a beneficiary under a spendthrift trust be reached and applied in payment of alimony of a divorced wife of the beneficiary? Upon the answer to this question depend the correctness of the entry of the judgment in the execution attachment, in favor of Mary, and its status as a lien.

That Lippincott's interest in this spendthrift trust is subject to seizure by attachment for the payment of arrearages due his wife, Alice, under the order of support awarded by the California Court is not here questioned. It could not be. It is now firmly settled, not only by our decisions, but also under our statutes, that as to claims for maintenance and support of deserted and neglected wives, not divorced, spendthrift trusts are invalid in this Commonwealth. See *Moorehead's Estate,* 289 Pa. 542, 137 A. 802, and *Stewart's Estate,* 334 Pa. 356, 5 A. 2d 910. Section 19 of the Wills Act of June 7, 1917, P. L. 403, provides: "All income whatsoever, devised or bequeathed by any will so as to be free from liability for the debts, contracts, or engagements of the beneficiary, or so as not to be subject to execution, attachment sur judgment, sequestration, or other process, shall, notwithstanding such testamentary provisions, be subject to and liable for the support and maintenance of

the *wife* and minor children of the beneficiary . . .; and all of the income of said beneficiary shall be subject to all legal process issued by any court of this Commonwealth having jurisdiction in the premises, in order to enforce such liability of said beneficiary." (Italics added.) Section 1 of the Act of May 10, 1921, P. L. 434, provides: ". . . whenever any court of competent jurisdiction has made an order or entered a decree or judgment against any husband requiring him to pay any sum or sums for the support of his *wife* or children or both, the court may issue the appropriate writ of execution against any property, real or personal, belonging to the defendant to enforce said order, decree, or judgment, and the said court may issue a writ of attachment execution . . . against any money or property to which said husband is entitled, whether under what is known as a spendthrift trust or otherwise; and the said writ of attachment execution shall become a lien and continuing levy upon any money or property to which he may be in any way entitled, whether under what is commonly known as a spendthrift trust or otherwise; and, in cases of levy on, or attachment of, any trust, said levy or attachment shall only be for fifty per centum thereof . . ." (Italics added.)

Whether the deserted wife be a resident or nonresident, she may now seize by attachment her husband's interest in a spendthrift trust. The reason is obvious for considering such a trust an ordinary one, as far as support and maintenance of a wife are concerned, it being the duty of the husband to provide for and protect his wife during the life of their marriage. The Commonwealth has a vital interest in the maintenance of marriage, because it is the foundation of society. In this connection, we said in *Com. ex rel. Deutsch v. Deutsch*, 347 Pa. 66, 69, 31 A. 2d 526, in interpreting the Act of 1921, supra, that "The neglect to maintain a wife and children is a criminal offense under our laws, and the Commonwealth is vitally interested not only in the

moral and social factors involved but also in preventing deserted wives from becoming public charges." On the other hand, the State has no such interest after a complete severance by law of the relationship of husband and wife. The purpose and effect of a decree of absolute divorce is to free the parties from each other and their marital obligations, and to permit them to marry again. After such complete and final separation it is not considered that any public policy requires the allowance of such an extraordinary and drastic remedy as seizure by execution of the income of a spendthrift trust, against the desire and intent of the creator of that trust. It is most manifest that such was not the intention of the Legislature in passing the Wills Act of 1917 and the Act of 1921, supra, nor of this Court in rendering its decisions in *Moorehead's Estate,* supra, and *Stewart's Estate,* supra, and that the word "wife" used in these statutes and decisions with reference to allowing spendthrift trusts to be attached for maintenance and support should include by analogy a "former wife", a "divorced wife", or an "ex-wife". If this conclusion were reached, then we would be compelled to interpret similarly many other statutes and decisions, and thus bring about completely contradictory results. A man can have but one wife, and when the word "wife" is used in statute or decision it means a woman then married to a man in lawful wedlock—not a woman who was his wife before she was divorced. Since an absolute divorce finally concludes the relationship existing between man and wife, a judgment obtained for permanent alimony must be treated as all other judgments for ordinary debts are treated. It has only the same standing, so far as reaching the interests of a former husband in a spendthrift trust, as has any judgment obtained by an ordinary creditor. Therefore, Lippincott's interest under the trust cannot be reached and applied in payment of alimony of his former wife, Mary. At the time of the creation of this trust, Mary had not been the wife

of the beneficiary for eight years. He was then married to Alice and they had been living together for about six years. The settlor had these facts in mind and also that she wished "spendthrift" protection for her son, so it is only logical to suppose that she intended "so far as may be permissible in law" to protect the trust fund and income from the "debts, contracts, engagements or liabilities" of her son, in which category the judgment of the former wife, Mary, must fall.

For these reasons, we are convinced that the learned court below erred in entering judgment in favor of Mary, the divorced wife, against the trustee-garnishee, and that it must be reversed.

There is no constitutional question involved. We are here only concerned with the form of the remedy, and that is to be determined by the law of Pennsylvania, since it is the place where the right was asserted: *Utica Mutual Ins. Co. v. Easton S. S. Co., Inc.,* 327 Pa. 241, 193 A. 56. In this connection, it is stated by Story in Conflict of Laws (8th ed.), p. 775: "That, in regard to the merits and rights involved in actions, the law of the place where they originated is to govern; but the form of remedies and the order of judicial proceedings are to be according to the law of the place where the action is instituted, without any regard to the domicile of the parties, the origin of the right, or the country of the act." The order for alimony entered in favor of Mary by the New York Court has been given full faith and credit in this Commonwealth. Upon that order, she entered suit and obtained judgment in this State. That judgment has all the usual remedies here given to other judgments of ordinary creditors. All that we have decided in the instant case is that execution cannot be had against a spendthrift trust in payment of alimony awarded to a divorced wife.

Judgment reversed.