446 So.2d 150 (1984)
Robert B. WHITE, Trustee and Luis Facundo Bacardi, Appellants,
v.
Adriana BACARDI, Appellee.
Nos. 82-943, 82-996.
District Court of Appeal of Florida, Third District.
January 24, 1984.
Rehearing Denied March 19, 1984.
*152 Steven Naclerio, Miami, Roger D. Haagenson, Fort Lauderdale, for appellants.
Nard S. Helman, Miami, for appellee.
Before SCHWARTZ, C.J., and NESBITT and FERGUSON, JJ.
FERGUSON, Judge.
Husband, the beneficiary of a spendthrift trust, along with one of the trustees, appeals an order of the trial court directing that the trust income be garnished to satisfy a provision in the final judgment of dissolution which requires husband to pay $2,000 per month in alimony, and which also provides for a continuing writ of garnishment for future alimony payments without further order of court.
The main issue is whether the income from a spendthrift trust is exempt from legal process to enforce a court ordered payment of alimony and attorney's fees to an ex-wife. We answer this question in the affirmative, and hold that such income is exempt.
The parties were married for only two years and had no children. It was the second marriage for each of them. The final judgment dissolving the marriage incorporated a property settlement agreement whereby the husband agreed to pay the wife $2,000 per month until the death of either of them or until the wife's remarriage. The wife subsequently obtained two judgments for unpaid alimony, with execution authorized, in the total amount of $14,000. She obtained a third judgment for attorney's fees in the amount of $1,000. In aid of execution on the three judgments, she served a writ of garnishment on Robert White as one of the three trustees of the spendthrift trust (two signatures are required for a disbursement). Additionally, she obtained an order imposing a continuing garnishment against the trust income for future payments of alimony as the sums became due.[1]
A history of the case is pertinent to the discussion. In 1971, prior to the marriage of the parties (and apparently during the marriage of the husband and his first wife), Louis I. Bacardi, the settlor, after consulting with counsel as to the validity of spendthrift trusts in Florida, created the subject trust, by terms of which no part of his son's beneficial interest was to be subject to execution to satisfy the son's debts. The trust provided that the son (appellant-husband) and the three children of his first marriage would be supported from the trust income. The agreement further provided in paragraph nine:
No part of the interest of any beneficiary of this trust shall be subject to hypothecation, pledge, transfer or subject to any debt of said beneficiary or any judgment of said beneficiary or process in aid of execution of said judgment.
We make two observations at this point.[2] First, Florida courts have recognized as *153 valid and enforceable spendthrift provisions in a trust whereby the trust income is protected as inalienable from acts of the beneficiary or those of his creditors. Waterbury v. Munn, 159 Fla. 754, 32 So.2d 603 (1947). Second, Florida has enacted no legislation which limits or qualifies the validity of spendthrift trusts, compare Missouri and Pennsylvania,[3] nor has it passed any law which specifically exempts spendthrift trust income from legal process. Cf. § 122.15(1), Fla. Stat. (1981) (benefits accruing under Florida Retirement System Act shall not be subject to "any legal process whatsoever").
There are no reported Florida cases which address this precise question. We have waded through many cases and statutes of other jurisdictions and find only a total absence of uniformity. Three basic schools of thought exist, with assorted variations, as to whether the income from a spendthrift trust which names the husband as beneficiary is exempt from execution to satisfy a court ordered payment of alimony to a wife after the marriage is dissolved. One view is that the trust income can be reached. The opposing view is that an ex-wife may not reach the trust unless it is clear that the settlor intended the former spouse to share as if she were a beneficiary. A third view is similar to the first in that it permits a former wife to reach the trust income but imposes a qualification or limitation that the extent to which, if any, the trust income will be diverted depends upon the needs of the former spouse and the fairness to the trust beneficiary. We examine the rationales given by these courts in reaching their decisions.
Courts which adopt the view that a wife or former wife may reach the trust income rely upon the husband's legal obligation to provide for the support of his wife and children. In this regard, In Re Moorehead's Estate, 289 Pa. 542, 137 A. 802 (1927) is hailed as the leading spendthrift trust case. Moorehead holds that a deserted wife may reach the trust income for support monies, relying in part on the theory that the obligation of support is not a true debt because of the legal unity of a husband and wife. The case also relies heavily on the notion that it is against public policy to refuse to permit a wife to reach the income of a spendthrift trust. The court stated:
Public policy is not so vague and wavering a matter as not to be rightly invoked in a case of this character, where the degenerating tendencies of marital relations of the present day are so faithfully exemplified by one who comes into court and demands judicial condonation of his violations of law. In every civilized country is recognized the obligation, sacred as well as lawful, of a husband to protect and provide for his family, and to sustain the claim of the husband in the case at bar would be to invest him with a right to be both a faithless husband and a vicious citizen. 137 A. at 806.
Other states which have permitted a former wife to reach the income of a spendthrift trust to satisfy an alimony award have done so solely on public policy grounds, finding that the husband's duty to support is more compelling than the enforcement of a trust in accordance with a settlor's expressed intent. See Safe Deposit & Trust Co. of Baltimore v. Robertson, 192 Md. 653, 65 A.2d 292 (1949) (the rule that gives legal effect to spendthrift provisions as against creditors should not be extended to claims for alimony as the wife *154 is a favored suitor and her claim is based upon the strongest grounds of public policy); Lucas v. Lucas, 365 S.W.2d 372 (Tex. Civ.App. 1962) (it is against public policy to allow a beneficiary of spendthrift trust to be well taken care of when those who have every right to look to him for support are doing without); Dillon v. Dillon, 244 Wis. 122, 11 N.W.2d 628 (1943) (public policy is not so vague and wavering as to permit a spendthrift trust beneficiary to be both a faithless husband and vicious citizen).
This is essentially the position taken by the Restatement (Second) of Trusts § 157 (1959), which provides:[4]
§ 157. Particular Classes of Claimants. Although a trust is a spendthrift trust or a trust for support, the interest of the beneficiary can be reached in satisfaction of an enforceable claim against the beneficiary,
(a) by the wife or child of the beneficiary for support, or by the wife for alimony; ... .
Safe Deposit & Trust Co. of Baltimore, supra, purports to follow the Restatement view and collects other cases which reach the same result by applying the Restatement rule. E.g., Keller v. Keller, 284 Ill. App. 198, 1 N.E.2d 773 (1936); Clay v. Hamilton, 116 Ind. App. 214, 63 N.E.2d 207 (1945); In Re Sullivan's Will, 144 Neb. 36, 12 N.W.2d 148 (1943); Cogswell v. Cogswell, 178 Or. 417, 167 P.2d 324 (1946). While the Restatement claimed  in 1935  to represent the majority view, it has been criticized as "far too broad" and unrepresentative of the state of the law. Seidenberg v. Seidenberg, 126 F. Supp. 19, 21 (D.D.C. 1954), aff'd 225 F.2d 545 (D.C. Cir.1955). The Restatement view has been specifically rejected by several jurisdictions, e.g., Roorda v. Roorda, 230 Iowa 1103, 300 N.W. 294 (1941); Bucknam v. Bucknam, 294 Mass. 214, 200 N.E. 918 (1936); Erickson v. Erickson, 197 Minn. 71, 266 N.W. 161 (1936).
It is not universally agreed, however, that a husband's obligation to support the wife continues with the same cogency after a divorce, as the legal "unity" dissipates upon divorce. See, e.g., Garretson v. Garretson, 306 A.2d 737 (Del. 1973) (court which accepted the argument that a wife who is separated from her husband is not a creditor of husband noted that there might be an entirely different situation if the parties were actually divorced, as the legal duty to support is no longer a factor); Kiffner v. Kiffner, 185 Iowa 1064, 171 N.W. 590 (1919) (once the trust income passes into the hands of the beneficiary, it becomes his unqualified property subject to legal process to satisfy his obligations, but so long as it is in control of the trustee, it is beyond the reach of the former wife who is no more than a creditor of the beneficiary).
Nor are the public policy arguments as strong in relation to a divorced wife. This was the view of the court in Lippincott v. Lippincott, 349 Pa. 501, 37 A.2d 741 (1944), the same court which had seventeen years earlier decided In Re Moorehead's Estate, supra. In Lippincott, the Pennsylvania court did not permit an ex-wife to reach the income from a spendthrift trust, holding:
After such complete and final separation it is not considered that any public policy requires the allowance of such an extraordinary and drastic remedy as seizure by execution of the income of a spendthrift trust, against the desire and intent of the creator of that trust. 37 A.2d at 743.
Other jurisdictions have embraced the Lippincott view that the public policy favoring the husband's obligation of support cannot prevail over the express intent of a spendthrift trust's creator. See Schwager v. *155 Schwager, 109 F.2d 754 (7th Cir.1940) (court acknowledges thoroughly established public policy which imposes upon a husband the duty to support his wife but is convinced that there is nothing in such policy which requires or permits the destruction of a spendthrift trust under the circumstances); Pemberton v. Pemberton, 9 Mass. App. 9, 411 N.E.2d 1305 (App.Ct. 1980) (settlor's intent accorded particular deference even in face of strong public policy arguments).
Several courts which also refuse to permit a spouse to reach the income of a spendthrift trust focus solely on the intent of the settlor, giving little consideration to notions of countervailing public policy. For instance, the California court in San Diego Trust & Savings Bank v. Heustis, 121 Cal. App. 675, 10 P.2d 158 (1932), acknowledged and rejected In Re Moorehead's Estate, noting that the funds did not originate with the beneficiary but with the settlor who had the right to bestow his benefactions as he pleased.[5] On the public policy point it observed:
We agree entirely with all that has been said about the duty of the beneficiary to support his wife and child; but that does not authorize interference with the right of another individual to dispose of his own property as he may see fit. In this case, the pressure was prematurely applied. There are methods of reaching the beneficiary directly. 10 P.2d at 165.
The court held that the testator who created the spendthrift trust owed no duty, legal or moral, to provide for the debts of his son, and the wife, with an alimony judgment, could not satisfy that judgment by levying against the trustee of the spendthrift trust. See also Burrage v. Bucknam, 301 Mass. 235, 16 N.E.2d 705 (1938) (trust created in "plain words" for support of beneficiary would not be construed to include support of wife); Erickson v. Erickson, 197 Minn. 71, 266 N.W. 161 (1936) (a spendthrift provision added to the trust by the settlor after the beneficiary divorced his wife was free from the claim of alimony); Moore v. Moore, 137 N.J. Eq. 314, 44 A.2d 639 (N.J.Ch. 1945) (beneficiary could not, even by agreement, defeat the intent of the founder of spendthrift trust, and court's adoption of the agreement in a divorce decree was ineffective); Martin v. Martin, 54 Ohio St.2d 101, 374 N.E.2d 1384 (1978) (if language of trust does not show intent of settlor that trust income be used for the payment of alimony to an ex-wife, such intention will not be imputed).
The third point of view which permits a former wife of the beneficiary to reach the trust income in a reasonable amount is, in effect, a limitation on the ability to reach it in the first instance. We disagree with the suggestion of the court in Safe Deposit & Trust Co. of Baltimore, supra, that this view need not be set apart as a separate and distinct one for the stated reason that an alimony award is always subject to review for reasonableness where there is a change in circumstances. That court failed to consider the possibility that an agreement for alimony may have been unreasonable ab initio, and a court should not be precluded from assessing the reasonableness of the award as against the income of a spendthrift trust even in the *156 absence of changed circumstances.[6] In light of the decision we reach, however, the discussion on this point is irrelevant.
Addressing the question in the belief that we are the first court in this state to do so, we align with what appears to be both the modern trend and the best reasoned view. We hold that a former wife of a spendthrift trust beneficiary may not reach the income of that trust for alimony before it reaches the beneficiary unless she can show by competent and substantial evidence that it was the settlor's intent that she participate as a beneficiary.[7] This holding squares with public policy as expressed in Waterbury v. Munn, supra, which recognizes as valid, provisions in a spendthrift trust barring alienation of the corpus or income by acts of the beneficiary or his creditors. See generally Croom v. Ocala Plumbing & Electric Co., 62 Fla. 460, 57 So. 243 (1911). Whether that public policy should give way to a public policy which recognizes the duty to support a former wife, we think, is a matter for the legislature. See Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932) (where there is disagreement as to which of two conflicting public policies ought to prevail, the legislature, acting within its constitutional authority, is the final arbiter). Public policy, although often used loosely, means the law of the state, whether found in or clearly implied from its constitution, statutes or judicial decisions. Building Service Employers International Union v. Gazzam, 339 U.S. 532, 537, 70 S.Ct. 784, 787, 94 L.Ed. 1045, 1050 (1950); Brown v. American Railway Express Co., 128 S.C. 428, 123 S.E. 97, 98 (1924). On the question presented, a clear public policy different from our holding is neither expressed by nor implied from the Florida or federal Constitutions, or from the statutes or judicial opinions of this jurisdiction. An exhaustive examination of the judicial opinions from other states also fails to reveal any consistent contrary policy.[8]
Reversed and remanded for further proceedings.[9]
SCHWARTZ, Chief Judge (dissenting).
Judge Ferguson's discussion of the relevant authorities is, as usual, complete and *157 fairly stated. But while I therefore appreciate the scholarship contained in the majority opinion, I cannot agree with its conclusion. In my judgment, we should adopt, for the reasons summarized in the court's opinion itself, the view expressed by the Restatement and what is still a majority of the cases that a spendthrift trust should not be immune from garnishment upon an alimony claim.
The majority says that this result would involve an example of of-course-to-be-despised judicial public policy-making, while its own conclusion does not. Although I freely and shamelessly confess to the correctness of the former assertion, I respectfully think that the latter one is false in both its modesty and content. Every judicial ruling is no more nor less than a conclusion that one "policy," which yields a given result, is to be preferred to that which produces the opposite. In this case, the court rejects the application of the "policy" which favors obligations generated by marriage in favor of the "policy" which deifies the supposed will of the settlor of a spendthrift trust. Although the majority purports not to acknowledge even that it has made such a choice, I recognize of course that it has the perfect right to do so. I simply think not only that it has made the wrong one but that its conclusion is not in accord with prior authority of this very court.
In City of Miami v. Spurrier, 320 So.2d 397 (Fla. 3d DCA 1975), cert. denied, 334 So.2d 604 (Fla. 1976) we followed the holding of City of Jacksonville v. Jones, 213 So.2d 259 (Fla. 1st DCA 1968) that Florida's "public policy" for the enforceability of such orders, as reflected by Sec. 61.12, Fla. Stat. (1981), which provides for garnishment in alimony and support cases, overrides a duly enacted municipal ordinance which on its face restricted pension benefits to the use of the employee, who himself earned them, alone. I believe that Spurrier presents an a fortiori situation to this one, in which the merely private desires of the senior Bacardi have been permitted to prevail over the public concerns which we vindicated there.
With startling frankness, the majority suggests that the law's interest in favoring marriage and enforcing marital obligations no longer obtains because we now realize that all marriages are not made in heaven. I am sure that is true[1]  and I suspect that even judges have known for some time that this is true  but I profoundly disagree with the proposition that our decisions should be based upon any such conclusion. Our system of law should be based, I think, upon the ideals of our society, rather than upon a "realistic," cynical perception of what some parts of it may be like. Public Health Trust v. Brown, 388 So.2d 1084 (Fla. 3d DCA 1980), rev. denied, 399 So.2d 1140 (Fla. 1981), approved in Fassoulas v. Ramey, 450 So.2d 822 (Fla. 1984); Bergman v. Serns, 443 So.2d 130 (Fla. 3d DCA 1983). If this is not the case, there is really no purpose to be served by having rules of law, indeed, of conduct at all. The court's reliance on the observation that modern marriages are often improvident and therefore often give rise to improvident debts carries its nihilism to its depth. In the present context, I would answer only that there is no reason that the courts should intervene to protect any spouse  including the younger Bacardi, whose own interests, rather than his father's, are those really at stake  from the consequences of his voluntary acts[2] and the requirements imposed by the standards of society and, until today's decision, by the law as well.
NOTES
[1] The unique remedy of a continuing writ of garnishment is authorized by Section 61.12(2), Florida Statutes (1981), to enforce an order of the court for periodic payment of alimony or child support or both. The parties have devoted a large portion of their briefs to the issue of whether this section is applicable only to wages and salaries, or whether a continuing writ of garnishment may be directed to the trustee of a trust. We need not answer the question in light of our holding.
[2] We also dispose of, briefly, two cases cited by appellee in support of her contention that the trust income is reachable by legal process. Buzzard v. Buzzard, 412 So.2d 388 (Fla.App. 2d DCA), rev. denied, 419 So.2d 1195 (Fla. 1982), holds that state pension funds are by statute exempt from legal process to pay alimony. City of Miami v. Spurrier, 320 So.2d 397 (Fla. 3d DCA 1975), cert. denied, 334 So.2d 604 (Fla. 1976), holds that a fireman's city pension fund may be reached by a divorced wife to satisfy court ordered payments of child support, medical expenses, and alimony. The two cases purport to reach different conclusions for different reasons, neither of which is particularly pertinent to the issue presented. Both cases involve legal process against a defendant's own property to satisfy the defendant's own obligations. The significant distinguishing (and troublesome) element in this spendthrift trust case is that the subject property is originally that of a third person (settlor), who had no legal or moral obligation to the plaintiff-wife, and who gave legal title to the property to a trustee for the beneficial use of the defendant-husband with expressed and valid limitations on use. The pension fund cases do not present conflicting points of law and public policy, i.e. the obligation of a husband to support a wife versus the giving of force and effect to a legal spendthrift trust in accordance with the settlor's intent that the income not be subject to legal process for payment of a beneficiary's improvident debts.
[3] Both states have by statute made spendthrift provisions in a trust instrument invalid as against the claim of a wife for alimony. Mo. Ann. Stat. § 456.080 (Vernon 1956) (spendthrift trust null and void as against claims of wife or children for support and maintenance, and as against claim of wife for alimony); 20 Pa. Cons. Stat. Ann. § 6112 (Purdon 1975) (income of trust subject to spendthrift provisions shall nevertheless be liable for the support of anyone whom the income beneficiary shall be under a legal duty to support).
[4] The illustrations to this section show that the Restatement position applies equally to a wife seeking support, and to a former wife seeking satisfaction of her claim for alimony. Although the section literally adopts the first view, Comment (b) to this section indicates that this position is not absolute for the wife may receive only an amount that the court deems fair to the beneficiary himself. Thus, the Restatement actually adopts the intermediate view or third view examined infra. This provision of the Restatement remains unchanged since its original promulgation as the Restatement (First) in 1935.
[5] The California court further justified its conclusion by stating that a trustee owes no duty to the creditor, but on the contrary, his trusteeship is in hostility to the creditor. Heustis, 10 P.2d at 165. Thus, a trustee may be distinguished from a typical stakeholder such as a bank or employer. The theory is that a garnishee is one who merely holds property belonging to a defendant, or who owes the defendant a debt. Edwards v. Stein, 94 N.J. Eq. 251, 119 A. 504, 506 (N.J.Ch. 1923). A trustee, however, in the strictest sense, holds legal title to property which he administers for another's benefit in accordance with the terms of the instrument creating the trust. Reinecke v. Smith, 289 U.S. 172, 53 S.Ct. 570, 77 L.Ed. 1109 (1933). The only interest of a true garnishee is to be relieved of further obligation to the defendant if he is ordered by the court to deliver the property or the debt to the plaintiff. A trustee, on the other hand, has a right of ownership and possession recognized by law, and is charged with carrying out specific duties imposed by the settlor, including protection of both the trust corpus and the income beneficiary's interest.
[6] We agree that this intermediate view is unnecessary when applied to alimony set by a court after hearing. Such an award is presumptively reasonable and is always subject to modification in light of changed circumstances. § 61.14(1), Fla. Stat. (1981). When the alimony award is incorporated into a divorce decree as part of a true property settlement agreement between the parties, however, the amount may be modified due to a change in circumstances only if the agreement itself so provides. See Grabow v. Grabow, 442 So.2d 262 (Fla. 3d DCA 1983).
[7] We do not decide whether the income of a spendthrift trust may be reached to support a wife where there has been no dissolution of marriage, or where there are dependent children. On those questions, public policy may be clearer. Neither do we decide whether there are any equitable circumstances where a spendthrift trust should be defeated, as a policy matter, in order to provide reasonably for an alimony-debtor ex-spouse. On the record before us no special circumstances are presented.
[8] The strong earlier views favoring the obligation of a husband to support a former wife over the clear intent of a settlor to exclude the beneficiary's wife (past, present or future), seem to rest, at least in part, on Victorian notions that all marriages are made in heaven  attendant with commitments more enduring than the parties. The elder Mr. Bacardi was more pragmatic, obviously realizing that which we as judges know to be fact, that many marriages (particularly short-lived ones which the courts are called upon to terminate) are improvidently entered into, giving rise to debts which are therefore improvident. The fact that the debt takes the form of alimony should not, absent extraordinary circumstances, defeat the clear purpose of a spendthrift trust.

On a philosophical note the dissent suggests, we think, that the judiciary has a responsibility to stem the shifting of societal mores by addressing a contemporary dilemma with remedies borne of fixed ideals. That may be true, but only to a small extent. Such an undertaking is not the court's primary function, nor is it within the court's capability. To the contrary, the courts, in the never-ending process of shaping the law, are obligated to adjust to uncontrollable shifts in social mores (which do not infringe on the rights of others), or risk becoming irrelevant. That is not courting nihilism.
[9] In further proceedings appellee may attempt to learn the whereabouts of the beneficiary which fact, if known by the trustee, is not protected by any privilege.
[1] See, e.g. Frohock v. Frohock, 117 Fla. 603, 158 So. 106 (1934); Posner v. Posner, 233 So.2d 381 (Fla. 1970).
[2] If Bacardi were so bemused by rum (yes, the parties are the Bacardis), or otherwise, that he was incapable of entering into either the marriage or the settlement agreement, other remedies are available to him. See 25 Fla.Jur.2d Family Law §§ 354 et seq. § 359 (1981).