Arthur Parker and his wife died on July 12th, 1939, in a common disaster. His daughter, Lola Parker Marvin, qualified as executrix of his estate. In 1923 he insured his life in The Penn Mutual Life Insurance Company for $10,000. The designation of beneficiary agreement forming *Page 434 
a part of the policy provided that the proceeds were to be paid, if his wife was not living on his death, to his daughter, Lola C. Parker (now Lola Parker Marvin) over a period of years at the monthly rate of $23.48. The designation of beneficiary agreement provided that "No beneficiary or assignee hereunder shall have the power of commutation, alienation or assignment of the installments or any of them unless by written permission of the insured, * * *."
Arthur Parker was indebted to complainant in the sum $1,820.88. It presented a verified proof of claim to the executrix which was not then paid. Learning that the executrix was permitting her husband to handle the estate and that its assets were being dissipated, the complainant instituted suit and obtained a judgment against the executrix for $1,960 and issued execution thereon. It also filed a petition in the Orphans Court to remove the executrix because of the mismanagement of the estate and misappropriation of its assets and to compel her to account. The hearing on the petition was adjourned from time to time during which time the solicitors of complainant, the executrix and her solicitor had conferences, in the course of which the executrix was threatened with further legal proceedings. Eventually she agreed to pay the judgment under the belief that her husband had sufficient assets with which to make good the shortage in the estate. In fulfillment of her agreement, she executed an instrument, reading in part:
"I do hereby guarantee payment of the amount of the judgment together with costs obtained by Chelsea-Wheeler Coal Co., a corporation, against me as Executrix of the Estate of Arthur Parker, deceased, and to that end, I do hereby give, assign and set over unto Chelsea-Wheeler Coal Co., a corporation, sufficient monies due to me by The Penn Mutual Life Insurance Company under policy No. 1045743 to pay the amount of said judgment together with costs and with interest at 4 per cent. per annum less any credit allowed by virtue of any payment made on account of said judgment from any sources whatsoever.
"WHEREAS under the terms of said insurance policy, I receive monthly payments of $25.18, I do hereby make, constitute and appoint Kirkman Mulligan, Esqs., my true, lawful and sufficient attorneys, for me and in my name, place and stead to receive these said monthly payments, to endorse my name thereon and to do any and all acts *Page 435 
necessary pertaining to the same so as to secure to their client, Chelsea-Wheeler Coal Co. the receipt of these monthly checks.
"I do hereby warrant that I shall forthwith notify The Penn Mutual Life Insurance Company to forward said monthly checks to me in care of Kirkman Mulligan, Esqs., at their law offices, Atlantic City, New Jersey."
She instructed The Penn Mutual Life Insurance Company to send her checks to Kirkman Mulligan and they received from the insurance company $119.08. The assignment and power of attorney were not filed with the company nor did it know of their existence. The note, assignment and power of attorney were executed on May 28th, 1940, but subsequently, on July 24th, 1940, a new assignment and power of attorney were drawn and it is the latter assignment and power of attorney that are quoted above. On the latter date, the complainant, with the consent of Mrs. Marvin's attorney, discontinued the removal proceedings in the Orphans Court.
In October, 1940, the Orphans Court, on a creditor's petition, removed the executrix and appointed Clarence Blitz and Herman J. Finn as substitutionary administrators cum testamento annexo of the estate. At about this time, Mrs. Marvin discovered that her husband was unable to make good the shortage in the estate and within a month she executed a power of attorney to the substitutionary administrators cum testamento annexo, authorizing them to receive the monthly installments payable under the insurance policy and to endorse and deposit the checks to the estate account. She also notified the insurance company to send the monthly checks to her in care of Herman J. Finn. When complainant's solicitors ceased to receive the monthly checks, they investigated and learned of Mrs. Marvin's removal and that the checks were being received by the substitutionary administrators and deposited in the estate account. Demand was made upon Mrs. Marvin and the substitutionary administrators to recognize the assignment to complainant and the power of attorney to its solicitors and also that the substitutionary administrators turn over to it the moneys which they had received by virtue of the subsequently executed power of attorney. The demand was refused. When the insurance *Page 436 
company learned of the assignment and powers of attorney, it refused to make further payments and entered its objection to any assignment or alienation of the proceeds of the policy. The insurance policy and the settlement option contract were delivered in the State of New Jersey and are governed by the laws of the State of New Jersey.
In this situation, Chelsea-Wheeler Coal Co. filed a bill in the Court of Chancery seeking a decree directing Mrs. Marvin to pay it sufficient moneys due and becoming due under the insurance policy to pay the promissory note given by her to complainant and seeking an accounting from the substitutionary administrators of the sums they had received from the insurance company and further that the substitutionary administrators be enjoined from collecting or receiving any sums due or becoming due to Mrs. Marvin under the policy. On final hearing, the Court of Chancery granted the relief prayed for. On appeal, the decree was reversed and the cause remanded, with instructions to join The Penn Mutual Life Insurance Company as a necessary party. Chelsea-WheelerCoal Co. v. Marvin, 132 N.J. Eq. 462. Upon the cause being remanded, The Penn Mutual Life Insurance Company filed an answer, asserting that the attempted assignment to Chelsea-Wheeler Coal Co. was in violation of its contract with its insured. On final hearing after remittitur, it was decreed that the power of attorney to the substitutionary administrators cum testamentoannexo was subject to the prior assignment to complainant and the power of attorney to its solicitors, and Mrs. Marvin and the substitutionary administrators were restrained from asserting to the contrary. It was also decreed that Mrs. Marvin specifically perform the agreement to assign the installments to the complainant, and directed her to notify the insurance company of the cancellation of the power of attorney to Messrs. Finn and Blitz and the reinstatement of the power of attorney to Kirkman 
Mulligan, and further directed that Messrs. Finn and Blitz make discovery of the amounts received by them from the insurance company.
The question for decision is whether the assignment by Lola Parker Marvin to complainant was valid in view of the *Page 437 
policy provision restricting commutation, alienation and assignment of the installments without the written permission of the insured.
When Arthur Parker executed the designation of beneficiary form providing for monthly installment payments to his widow or daughter, and prohibiting assignment by the beneficiary unless with his written permission, a contract came into existence. Upon his death without having altered that contract it became irrevocable and the insurance company was bound to carry out its obligations thereunder in accordance with the terms of the contract. McLaughlin v. Equitable Life, 112 N.J. Eq. 344. On the date when Mrs. Marvin assigned to the complainant "sufficient monies due to me" there were not then payable to her any installments. It would seem to follow necessarily that the assignment contemplated a present assignment of future installments. If the instrument did not contemplate an assignment of future installments but only installments then due, it was meaningless since, as stated above, there was then no installment due and unpaid. We will not adopt a construction which renders an instrument meaningless. Mrs. Marvin's interest in funds from the policy was assignable unless enjoined by the contract out of which it arose. Even though a contract may prohibit assignment, such prohibition may be disregarded where it is not the main purpose of the contract, but is a mere incident to such main purpose. Grigg v. Landis, 21 N.J. Eq. 494 (at p. 510). The determination of the question of the validity of the assignment rests in the intention of Arthur Parker and the insurance company. His wife and daughter were the natural objects of his bounty and it was but a husbandly and paternal desire on his part to make provision for their support after his death. In fulfillment of that desire and doubtless to protect them from the results of their own imprudence or improvidence, he provided for the payment of the insurance fund in fixed installments over a period of time and prohibited the beneficiary from alienating or assigning the installments. For the next sixteen years he apparently was of the same mind since he made no change in the policy provisions, although the contract reserved that *Page 438 
right to him. Then occurred the catastrophe resulting in the death of his wife and himself. It seems clear to us that the primary intent of the parties to the contract of insurance was to afford a modest but regular income to the widow or daughter. Unless the plan adopted was in violation of statute or public policy, it must be upheld. Our attention has not been called to any case in New Jersey dealing with the right to restrain alienation of an insurance fund through the medium of the insurance contract itself. We think, however, that there is a close analogy between the situation sub judice and the type of restraint on alienation or assignment found in "spendthrift trusts." Parenthetically we point out that it is immaterial whether or not the beneficiary is in fact a spendthrift. As pointed out in 1 Scott on Trusts, § 152, the designation is useful as indicating that the beneficiary is subject to a restraint on alienation.
In The Trust Company of New Jersey v. Gardner, 133 N.J. Eq. 436,
Vice-Chancellor Fielder held that "restraints against alienation of anticipated life income are valid and enforceable." This view is in accord with the law in many of the courts of this country. See cases collected in 119 A.L.R. 24 et seq. Also 1Restatement of the Law of Trusts, § 152 (1). In BroadwayNational Bank v. Adams, 133 Mass. 170, it was held that the income of a trust fund given "free from the interference or control of his [the beneficiary's] creditors, my intention being that the use of said income shall not be anticipated by assignment" could not be reached by attachment, in law or equity, before it was paid to the cestui que trust. The rationale of the decision is that the testator was the absolute owner of his property and had the right to impose such restrictions, not repugnant to law, as he saw fit. The court disposed of the contention that such restriction was against public policy by pointing out that the rule subjecting a debtor's property to the payment of his debts "does not give the creditor a right to complain that, in the exercise of his absolute right of disposition, the donor has not seen fit to give the property to the creditor, but has left it out of his reach."
We are faced with what may be termed conflicting phases *Page 439 
of public policy; on the one hand the right of creditors to satisfaction of the just debts owing to them and on the other hand the equally well-recognized right of the head of a family to provide for his dependents after his death. The public policy in this regard has been chartered by the legislature by R.S.2:26-182 dealing with the right of a judgment creditor to reach debts and income from trust funds owing to the judgment debtor. By that statute the judgment creditor is precluded from proceeding by way of execution against any debt or income from trust funds owing to the debtor which do not amount to $18 or more a week. The installments in the present case are well below the statutory minimum. While the statute referred to above is not involved in the present situation and moreover is applicable only to involuntary alienation, nevertheless it is declarative of a public policy to safeguard a reasonable sum for sustenance from the hands of creditors. Cf. Harcum v. Greene,111 N.J. Law 129; Cowan v. Storms, 121 N.J. Law 336.
For the reasons stated, we hold that the attempted assignment and the power of attorney are invalid. The decree under appeal is reversed and the cause remanded with instructions to enter a decree in accordance herewith.
For affirmance — DONGES, WELLS, JJ. 2.
For reversal — THE CHIEF-JUSTICE, PARKER, CASE, HEHER, PERSKIE, PORTER, COLIE, DEAR, RAFFERTY, HAGUE, THOMPSON, DILL, JJ. 12. *Page 440