131 N.J. Super. 336 (1974)
329 A.2d 604
FAMILY FINANCE CORPORATION, PLAINTIFF,
v.
WILLIAM JENKINS, ET AL., DEFENDANTS. AVCO FINANCIAL SERVICES, PLAINTIFF,
v.
WILLIAM S. JENKINS, ET AL., DEFENDANTS.
Superior Court of New Jersey, District Court  Essex County.
November 20, 1974.
*338 Mr. Charles H. Sachs for plaintiff Family Finance Corporation (Messrs. Irving & Charles H. Sachs, attorneys).
Mr. Irving U. Young for plaintiff Avco Financial Services and Mr. Robert E. Young on brief for plaintiff Avco Financial Services (Messrs. Young & Young, attorneys).
No appearance for any defendant.
ALBANO, J.D.C.
Family Finance Corporation (Family), by notice of motion, asks to have the priorities of two wage executions determined. It would appear, however, that the relief sought is not so much the settling of priorities as it is the postponement of a wage execution secured by Avco Financial Services (Avco) to one secured by Family.
On or about April 9, 1970 William S. Jenkins and Lillian Lowe executed a promissory note to Seaboard Finance Company, a predecessor of Avco. The parties defaulted in the payment of the note and an action was brought in this court. Personal service of process was effected on William S. Jenkins and service on Lillian Lowe was effected by service on *339 said William S. Jenkins. Default was entered and judgment recovered on April 18, 1972. Thereafter, on May 17, 1972, the amount of the debt being $972.36, orders for wage executions were issued to Constable Joseph V. Esposito, in Essex County, against wages of William S. Jenkins, and to Constable Alan Higgs, in Union County, against wages of Lillian Lowe. Shortly before the motion here, approximately $700 had been collected on the wage execution against the wages of Lillian Lowe, and there is no dispute with regard to this wage execution.
The problem lies with the wage execution issued against the wages of William S. Jenkins and the subsequent wage execution of Family. By letter of December 13, 1973 counsel for Avco informed the employer of William S. Jenkins of an agreement for the making of voluntary weekly payments and authorized the employer to withhold the making of deductions from wages until further notice. This letter contained also, the following:
The writ of execution is to remain on file in your office and retain its priority until the judgment is paid in full, at which time we will notify you to that effect. If in the meantime you are served with another wage execution against the same employee, this suspension is to be cancelled and the aforesaid writ of execution is to be automatically reinstated so that it does not lose its position.
A copy of this letter was sent to Constable Esposito.
On or about December 26, 1962 William Jenkins and Jessie Caldwell Jenkins executed a promissory note to Family. The parties defaulted in the payment of the note and an action was brought in this court. Personal service of process was effected on William Jenkins and service on Jessie Caldwell Jenkins was effected by service on said William Jenkins. Default was entered and judgment recovered on March 14, 1974. Thereafter, on April 5, 1974, the amount of the debt being $607, an order for wage execution was issued to the same Constable Esposito against the wages of William Jenkins. For a period of time moneys were collected under this *340 second wage execution, and then stopped. Family's objective, now, is to have its wage execution honored by Jenkins' employer and to have deductions made for its benefit. The question of any defense to the earlier promissory note to Family, being collateral, is not before the court  only the consequent judgments and wage executors are to be considered.
In its memorandum of law Family argues that the December 13, 1973 letter suspending deductions under Avco's wage execution amounted to a modification of a court order, in violation of N.J.S.A. 2A:17-55; was done without the consent or knowledge of the court; was an interference with a court order and, without such interference, the first judgment would have been satisfied, so that the result of Avco's act has been prejudicial to Family's interests, and, therefore, Family's wage execution is entitled to priority even though junior in point of time. No cases are cited in support of Family's position.
Avco, in its memorandum of law, argues that it has been common practice to modify wage executions, by letters similar to that of December 13, 1973, to avoid hardship on a defendant or to avoid the possibility of employment termination where a second wage execution is served on an employer. No cases are cited in support of Avco's position.
Two wage execution statutes could come into play in this proceeding: N.J.S.A. 2A:17-52, "Number of executions issued and levied at same time," and N.J.S.A. 2A:17-55, "Modification of Execution." Essentially, N.J.S.A. 2A: 17-52 provides that only one wage execution shall be satisfied at a time, and where more than one execution shall be issued their priority shall be determined by the order in which they are presented. N.J.S.A. 2A:17-55 provides that either party may apply to the court issuing the execution for its modification.
The wage execution issued in favor of Avco, being earlier in time, should have priority over that issued in favor of Family, if N.J.S.A. 2A:17-52 is applied literally, and *341 should be effective since no modification, if required by N.J.S.A. 2A:17-55, was sought.
Yet, there is much equity in the position taken by Family. The Avco judgment was $972.36. Avco secured its wage execution on May 17, 1972, and Family secured its wage execution on April 5, 1974, or 97 weeks later. The Avco judgment would have been satisfied if $10.02 a week had been paid, and the Family judgment could have begun to be satisfied without interruption. Additionally, if credit is given to the $700 collected from the co-obligor, Lillian Lowe, the amount needed from William S. Jenkins was $272.36. This could have been satisfied by the payment of $2.81 a week. Avco has not submitted any proof as to its collection efforts or as to the balance due from William S. Jenkins, but relies on the common practice of counsel to suspend wage executions to alleviate hardship to defendants.
Counsel cited no case law to support their conflicting contentions, and the court has found no case law under the wage execution statutes, N.J.S.A. 2A:17-50 et seq. On the other hand, by analogy to N.J.S.A. 2A:17-1 et seq., "Executions," a good legal conclusion can be reached without straining statutory construction and without unwarranted judicial ingenuity.
In Cumberland Bank v. Hann, 19 N.J.L. 166, 168-170 (Sup. Ct. 1842), various rules were laid down as being representative of New Jersey law in relation to writs of execution against goods and chattels. Not all of these rules can be applied to the matter at hand, but those that can be said to control are:
Fifth: The plaintiff may wait on the sheriff, as long as the sheriff chooses to indulge the defendant; or the plaintiff may consent to reasonable adjournments from time to time, or even direct such adjournments, without thereby losing his priority, provided it is done in good faith.
Sixth: The plaintiff, when he delivers his execution to the sheriff, or at any time afterwards, may direct the sheriff not to proceed to a sale, without further orders from him; or unless urged on by younger *342 executions, without thereby losing his priority; provided the same be done in good faith. But,
Seventh: If the defendant is permitted with the knowledge and consent of the plaintiff express or implied, not only to retain the possession of the property and to use and enjoy it for its ordinary and appropriate purposes, as in the case of household goods; but to exercise an unlimited control over all the property levied on, whatever may be its nature; to use, sell, exchange or consume it, as the rightful and absolute owner, it is such evidence of a fraudulent and colorable use of the process of the court, whether the debt be a real and just one or not, as to postpone the execution to younger ones sued out and prosecuted in good faith. And lastly, it is not necessary to prove actual fraud in the concoction of the judgment; nor an actual deliberate intention or design to defeat, hinder or delay other creditors. A man may lose his rights, as well by negligence, and a disregard to the rights of others, as by positive fraud or malfeasance.
Admittedly, Cumberland Bank v. Hann, supra, is a relatively old case. There is no subsequent one modifying or changing the various rules it stated. And there is no reason not to apply those rules to wage executions.
Avco had priority over wage executions subsequent in time to the one it secured. Avco then interfered, without benefit of court order, with the running of the wage execution.
Under the "Fifth" rule above, what difference is there in theory between a wage execution delivered to an employer and an execution against goods and chattels delivered to a sheriff? One is satisfied by deductions from wages and the other is satisfied by a sale. What difference is there if plaintiff suspends the wage execution or postpones the sale of goods and chattels? In either case there is no substantive difference.
Under the "Sixth" rule above, what difference is there in theory if the employer is directed to suspend deductions under a wage execution or a sheriff directed not to proceed with a sale under an execution against goods and chattels, until further order or urged on by a younger execution? There is no substantive difference.
Under the "Seventh" rule above, there can be no real difference in theory either. William S. Jenkins, during the suspension of the wage execution, retained his wages and exercised an unlimited control over them. True, he had a *343 voluntary agreement with Avco, but simply because it was voluntary and without court order, it was tantamount to no legal limitation and left William S. Jenkins in full control of his wages, as the rightful and absolute owner of them.
As has been pointed out, the Avco wage execution could and should have been satisfied before the Family wage execution issued. No fraud or malfeasance is suggested; however, there has been interference with the running of the Avco wage execution, and there obviously has been negligence in the Avco collection efforts. But for this interference and negligence, Family would be entitled to have its wage execution honored. This amounts to such a disregard of the rights of others, under the "Seventh" rule above, as to effect a postponement of the Avco wage execution to that of Family.
If wage execution holders wish to suspend proceedings, they either should utilize N.J.S.A. 2A:17-55 or pursue their collections so as not to cause injury to others.
The motion of Family will be granted postponing the priority of the Avco wage execution to that of Family.