249 N.J. Super. 301 (1991)
592 A.2d 319
GREATE BAY HOTEL AND CASINO T/A THE SANDS, PLAINTIFF-APPELLANT,
v.
WILLIAM J. GUIDO, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted May 15, 1991.
Decided July 1, 1991.
*302 Before Judges KING, LONG and STERN.
Craner, Nelson, Satkin & Scheer, attorneys for appellant (M. Richard Scheer, on the letter brief).
William J. Guido, respondent pro se, did not file a brief.
The opinion of the court was delivered by LONG, J.A.D.
In 1989, defendant William J. Guido owed money to plaintiff Greate Bay Hotel & Casino t/a The Sands as a result of a check which was dishonored. Plaintiff filed suit in February 1990 and a judgment in the amount of $6093.29, with costs was entered on April 17, 1990. On May 24, 1990, plaintiff moved for a wage execution pursuant to R. 4:59-1(d) to which defendant objected. The matter was heard before the trial judge on August 17, 1990 at which time defendant acknowledged the debt, outlined his various financial difficulties, and explained that he could continue to pay off the debt at no more than $50 per month (which he had been doing). He also stated that no other wage execution was in place.
The trial judge declined to order a wage execution because defendant could not "afford" it. In September 1990, plaintiff requested that the trial judge reconsider, arguing that the wage execution statute is "mandatory." The trial judge responded by letter:
So that the record is straight, I did not deny the wage execution for the reason that the defendant was paying $50.00 monthly and that he had extensive other obligations. My reason was that, based upon his sworn testimony, his obligations for living expenses far exceeded his income. I was satisfied that he simply could not afford a wage execution and I frankly don't know how he lives from month to month in his present situation. If you wish to order a transcript of the hearing, you certainly may do so.
Accordingly, I decline to reverse my prior ruling.
*303 He entered an order to this effect on October 9, 1990. Plaintiff appeals. We reverse, holding that, upon the presentation of the statutorily mandated proofs, a judge is without discretion to deny a wage execution under N.J.S.A. 2A:17-50.
N.J.S.A. 2A:17-50 provides:
When a judgment has been recovered in the Superior Court, a County Court or county district court and where any wages, debts, earnings, salary, income from trust funds, or profits are due and owing to the judgment debtor, or thereafter become due and owing to him, to the amount of $48.00 or more a week, the judgment creditor may, on notice to the judgment debtor unless the court otherwise orders, apply to the court in which the judgment was recovered, or to the court having jurisdiction of the same, and upon satisfactory proofs, by affidavit or otherwise, of such facts, the court shall grant an order directing that an execution issue against the wages, debts, earnings, salary, income from trust funds, or profits of the judgment debtor.
This statute has not previously been interpreted in light of the pending question of whether it is mandatory or permissive. However, the use of the word "shall" by the Legislature ordinarily carries with it a presumption that the provision is mandatory and not merely permissive. Harvey v. Essex County Bd. of Chosen Freeholders, 30 N.J. 381, 391-92, 153 A.2d 10 (1959); State, Dep't of Envtl. Protection v. Lewis, 215 N.J. Super. 564, 575, 522 A.2d 485 (App.Div. 1987); Bell v. Western Empire Ins. Co., 173 N.J. Super. 60, 65, 413 A.2d 363 (App.Div. 1980). To be sure, this presumption can be overcome by something in the character or context of the legislation which justifies a different meaning. Swiney v. Department of Treasury, Division of Pensions, 84 N.J. Super. 186, 192, 201 A.2d 392 (App.Div. 1964). Here, however, there is nothing to suggest that a literal reading of N.J.S.A. 2A:17-50 would not be "responsive to the essential principal of the law." Alexander v. New Jersey Power & Light Co., 21 N.J. 373, 378, 122 A.2d 339 (1956).
The proofs required to obtain a wage execution do not contemplate the exercise of discretion. All that is required is proof that "a judgment has been recovered" by plaintiff and that "wages, debts, earnings, salary, income from trust funds, or profits are due and owing to the judgment debtor ... to the *304 amount of $48.00 or more a week." Upon satisfactory proof of "such facts" the court "shall grant" an execution.
There is no provision in the statute for the judge to consider other obligations of the judgment debtor or to assess whether the debtor can "afford" a wage execution. Indeed, the point behind the income limitation trigger in the statute (if the debtor is receiving less than $48 per week no execution may issue) is a declaration of the public policy to safeguard a reasonable sum for sustenance from the hands of creditors. See Chelsea-Wheeler Coal Co. v. Marvin, 134 N.J. Eq. 432, 439, 35 A.2d 874 (E. & A. 1944). By that provision, the Legislature has determined that anyone receiving over $48 per week can "afford" a wage execution.
The absence of discretionary language in N.J.S.A. 2A:17-50 is, we think, an especially telling point in light of N.J.S.A. 2A:17-55, in which the Legislature specifically reserved to the trial judge the right, upon application by either party, to modify an existing execution if he deems it "just." The difference between the initial application and the modification is a significant one. Two wage executions may not be satisfied at the same time but instead are satisfied sequentially in order of priority. N.J.S.A. 2A:17-52. Thus, it is critical that the judgment debtor who is first in time should have his or execution placed in effect, upon proof of the debt and the income, with no delay. See Family Finance Corp. v. Jenkins, 131 N.J. Super. 336, 329 A.2d 604 (Cty.Ct. 1974) (holding that where a judgment creditor has accepted voluntary payments in lieu of enforcing his execution, a junior creditor with a later execution is entitled to satisfaction first.) Once in effect, that execution retains priority over other, later executions although it may be modified to accommodate the aims of justice. N.J.S.A. 2A:17-55. This is the policy reason behind the mandatory language in N.J.S.A. 2A:17-50. The mandatory scheme was created to avoid a situation in which one judge denies a wage execution and another judge thereafter grants one to a less diligent junior *305 creditor. That is the evil which flows when the discretionary view of an initial grant of an execution is adopted.
Finally, we note N.J.S.A. 2A:17-56.8, which is an analogue of N.J.S.A. 2A:17-50, and provides for wage executions in matrimonial cases. In Slater v. Slater, 223 N.J. Super. 511, 539 A.2d 290 (App.Div.), certif. denied, 113 N.J. 338, 550 A.2d 453 (1988), after tracing the history of the statute, we held that the Legislature's substitution of the word "shall" for the word "may" evidenced an intent that it was "no longer within the discretion of the court to order a wage execution" but that "withholding is now mandatory" when the statutory showing is made. Id. 223 N.J. Super. at 515, 539 A.2d 290. We see no reason to interpret the word "shall" in N.J.S.A. 2A:17-50 differently.
We thus reverse the trial judge's order denying plaintiff a wage execution and direct that the execution be imposed nunc pro tunc so as to avoid plaintiff's loss of priority.
Reversed and remanded.